UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MOUNIR HOWARD,

                        Plaintiff,

                                                                    6:23-CV-1160
            v.                                                      (GTS/ML)

ONEIDA CNTY. DISTRICT ATTORNEY'S
OFFICE; AMANDA TUCCIARONE, District
Attorney; TODD CARVILLE, District
Attorney; SCOTT D. MCNAMARA, District Attorney; and
GRANT GARRAMONE, District Attorney,

                        Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

MOUNIR HOWARD
    *Pro Se* Plaintiff
Oneida County Correctional Facility
6075 Judd Road
Oriskany, New York 13424

MIROSLAV LOVRIC, United States Magistrate Judge


## ORDER and REPORT-RECOMMENDATION

The Clerk has sent a *pro se* complaint in the above captioned action together with an

application to proceed *in forma pauperis* ("IFP") and inmate authorization form filed by Mounir

Howard ("Plaintiff") to the Court for review.  (Dkt. Nos. 1, 2, 3.)  For the reasons discussed

below, I grant Plaintiff's *in forma pauperis* application and recommend that Plaintiff's

Complaint be dismissed in its entirety with leave to amend.  (Dkt. Nos. 1, 2, 3.)

I.      **BACKGROUND**

Construed as liberally[1] as possible, Plaintiff's Complaint appears to allege that his civil rights were violated by Defendants Oneida County District Attorney's Office, Amanda Tucciarone, Todd Carville, Scott D. McNamara, and Grant Garramone (collectively "Defendants").  (*See generally* Dkt. No 1.)  Plaintiff's Complaint consists of two form complaints—one on the form complaint for civil rights violations pursuant to 42 U.S.C. § 1983 and one on the form complaint for pro se prisoner complaints—and four attached narrative pages.  (*Id*.)

More specifically, Plaintiff alleges that Defendants initiated and have continued a criminal action against him without probable cause.  (Dkt. No. 1 at 9.)  The Complaint alleges that Plaintiff has been unlawfully detained since July 28, 2023, for a crime that he did not commit with evidence fabricated by non-party Utica Police Department.  (*Id*.)

As a result of these factual allegations, Plaintiff asserts the following two claims: (1) a claim of malicious prosecution in violation of the Fourth Amendment and 42 U.S.C. § 1983; and (2) a claim of fabrication of evidence in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

As relief, Plaintiff seeks dismissal of the criminal charges brought against him and a "full investigation into the misconduct of OCDA Office."  (*Id*. at 13.)

Plaintiff seeks leave to proceed IFP.  (Dkt. No. 2.)

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## II.      PLAINTIFF'S APPLICATION TO PROCEED *IN FORMA PAUPERIS*

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged." *Cash v. Bernstein*, 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).[2] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash*, 2010 WL 5185047, at *1 (citing 28 U.S.C. § 1915(b); *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

Upon review, the Court finds that Plaintiff has submitted a completed IFP application which has been certified by an appropriate official at his facility (Dkt. No. 2), and which demonstrates economic need. *See* 28 U.S.C. § 1915(a)(2). Plaintiff has also filed the inmate authorization required in the Northern District. (Dkt. No. 3.)

Accordingly, Plaintiff's application to proceed with this action IFP is granted. (Dkt. No. 2.)

## III.     LEGAL STANDARD FOR INITIAL REVIEW OF THE COMPLAINT

Having found that Plaintiff met the financial criteria for commencing this action *in forma pauperis*, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e). Section 1915(e) of Title 28 of the United States Code directs that,

---

[2]     Section § 1915(g) prohibits a prisoner from proceeding *in forma pauperis* where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(g). The Court has reviewed Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service. *See* http://pacer.uspci.uscourts.gov. It does not appear from that review that Plaintiff had accumulated three strikes for purposes of 28 U.S.C. § 1915(g) as of the date this action was commenced.

when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that— . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B); *see also* 28 U.S.C. 1915A(a) ("The court shall review . . . as soon as practicable . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").[3]

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure.  Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See* Fed. R. Civ. P. 8(a)(2).  The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (quoting *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), *rev'd on other grounds*, 682 F. App'x 30.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is

---

[3]      To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis in either law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

inapplicable to legal conclusions." *Ashcroft*, 556 U.S. at 678. "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(citing *Twombly*, 550 U.S. at 555). Rule 8 "demands more than an unadorned the-defendant-

unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which

"are so vague as to fail to give the defendants adequate notice of the claims against them" is

subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

 "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a . . .

complaint before the adverse party has been served and [the] parties . . . have had an opportunity

to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). The Court, however, also

has an overarching obligation to determine that a claim is not legally frivolous before permitting

a plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*,

221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous

complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal

frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as]

when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the

face of the complaint." *Aguilar v. United States*, 99-MC-0304, 99-MC-0408, 1999 WL

1067841, at *2 (D. Conn. Nov. 8, 1999) (quoting *Livingston v. Adirondack Beverage Co.*, 141

F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989)

("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable

basis."); *Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995) ("[T]he decision that a complaint is based

on an indisputably meritless legal theory for purposes of dismissal under section 1915(d), may be

based upon a defense that appears on the face of the complaint.").

**IV.    ANALYSIS**

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Federal courts have "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 19 U.S. 264, 404 (1821).  In *Younger*, the Supreme Court recognized a limited exception to this general rule, holding that federal courts should abstain from exercising jurisdiction over suits to enjoin pending state criminal proceedings, absent a showing of bad faith, harassment, or a patently invalid state statute. *See Younger v. Harris*, 401 U.S. 37, 53-54 (1971) (citation omitted).

*Younger* is not based on an Article III requirement, but instead is a "prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (citations omitted). The rationale behind *Younger* was set forth by the Second Circuit in *Spargo*:

> Our Federalism in its ideal form, as the Supreme Court explained in *Younger*, strives towards a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States.  In recognition of this balance of interests, *Younger* generally prohibits courts from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings so as to avoid unnecessary friction.  Giving states the first opportunity . . . to correct their own mistakes when there is an ongoing state proceeding serves the vital purpose of reaffirm[ing] the competence of the state courts, and acknowledging the dignity of states as co-equal sovereigns in our federal system.

*Spargo*, 351 F.3d at 75 (internal quotations and citations omitted).

To determine whether abstention is appropriate under *Younger*, district courts must conduct a three-pronged inquiry: "[a]bstention is mandatory where: (1) 'there is an ongoing state proceeding; (2) an important state interest is implicated; and (3) the plaintiff has an avenue open for review of constitutional claims in the state court.'" *Glatzer v. Barone*, 394 F. App'x 763, 764 (2d Cir. 2010) (quoting *Liberty Mutual Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009)). The Supreme Court, however, has stressed that "[c]ircumstances fitting within the *Younger* doctrine . . . are 'exceptional'" and include only "'state criminal prosecutions,' 'civil enforcement proceedings,' and 'civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (quoting *New Orleans Public Service, Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989)).

### A.    First Prong

Under *Younger*'s first prong, "[n]ot only must state proceedings be pending[,] . . . the proceedings must have been initiated 'before any proceedings of substance on the merits have taken place in the federal court.'" *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984)).  Additionally, "a party . . . must exhaust his state appellate remedies before seeking relief in the District Court[.]" *Glatzer v. Barone*, 394 F. App'x 763, 765 (2d Cir. 2010) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 610 (1975)).

Here, based on the allegations contained in the Complaint there is presently an ongoing state criminal proceeding against Plaintiff.  (Dkt. No. 1 at 9 [alleging that Defendants "initiated and continue proceeding against [Plaintiff]" the charge of criminal possession of a weapon].) Thus, since Plaintiff "face[s a] pending proceeding[] before the state court, [that] proceeding[] . .

. qualif[ies] as ongoing under *Younger* regardless of whether Plaintiff[] decide[s] to file an appeal." *Pervu v. City of Oneonta*, 19-CV-0861, 2020 WL 1643392, at *5 (N.D.N.Y. Apr. 2, 2020) (D'Agostino, J.).

### B.    Second Prong

*Younger*'s second prong, requiring that "an important state interest is implicated in that proceeding[,]" has also been met in the present matter. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).   "[D]etermining whether a state interest is 'important' turns not on the narrow outcome of the particular state court proceeding at hand, but rather on the importance of the generic proceedings to the state." *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989); *Grieve*, 269 F.3d at 152).

"There is no question that [an] ongoing prosecution implicates important state interests." *Davis v. Lansing*, 851 F.2d 72, 76 (2d Cir. 1988).

### C.    Third Prong

*Younger*'s third and final prong requires that "the state proceeding afford[ ] the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)).   "The relevant question under *Younger* is 'whether the state's procedural remedies *could* provide the relief sought [not] . . . whether the state *will* provide' the constitutional ruling which the plaintiff seeks." *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 79 (2d Cir. 2003) (alteration in original) (citation omitted).

Here, should Plaintiff be convicted, he may raise his constitutional claims on direct appeal or through collateral review of his conviction in state court. *See Tyson v. Clifford*, 18-CV-1600, 2018 WL 6727538, at *4 (D. Conn. Dec. 21, 2018) (plaintiff is "not precluded from challenging any subsequent conviction or sentence on appeal to the Connecticut Appellate and Supreme Courts, filing a habeas petition in the Connecticut Superior Court, and following that, a habeas petition in federal court"); *Robinson v. Sposato*, 11-CV-0191, 2012 WL 1965631, at *3 (E.D.N.Y. May 29, 2012) (direct appeal or collateral review provide "ample opportunity for review of petitioner's constitutional claim in state court"); *Miller v. County of Nassau*, 467 F. Supp. 2d 308, 317 (E.D.N.Y. 2006) (plaintiff can raise arguments on appeal once state court judgment enters).

### D.    Bad Faith Exceptions

Even when a case has met all three of *Younger*'s prongs, "federal relief is obtainable[,] . . . where [] there is a showing of bad faith or harassment in bringing the or conducting the state proceeding." *Wandyful Stadium, Inc. v. Town of Hempstead*, 959 F. Supp. 585, 591 (E.D.N.Y. 1997) (citing *Younger*, 401 U.S. at 50). "[F]or such a showing to be made, generally 'the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome.'" *Homere*, 322 F. Supp. 3d at 368 (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)) (citation omitted); *see also Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975) (noting that bad faith under *Younger* "generally means a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"). Furthermore, "[a] pattern of harassment both before and after institution of the state prosecution would be probative of the animus that attended the decision to prosecute." *Colonial First Properties, LLC v. Henrico Cnty. Virginia*, 166 F. Supp. 2d 1070, 1087 n.12 (E.D. Va. 2001).

Here, Plaintiff fails to allege facts plausibly suggesting that Defendants brought the state proceedings in bath faith, *i.e.*, with "no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994).

Plaintiff alleges that Defendants targeted him because he is an African American man and they would like to "revitalize certain communities in the City of Utica" with the goal of a "promise[d] reelection." (Dkt. No. 1 at 9-11.)  However, these "allegations [of bad faith and harassment] are too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith." *DeMartino v. New York State Dep't of Labor*, 167 F. Supp. 3d 342, 355-56 (E.D.N.Y. 2016); *see Pervu*, 2020 WL 1643392, at *7 (finding that the plaintiff's allegations that the defendants submitted misleading photographs to establish code violations in state court and the plaintiff's allegation that the state court judgment was jurisdictionally defective, were too conclusory to plausibly suggest bad faith for purposes of *Younger* abstention).

As a result, I recommend that the Court "abstain from exercising subject matter jurisdiction" over Plaintiff's claims.  *Wilson v. Emond*, 373 F. App'x 98, 100 (2d Cir. 2010).[4]

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when

---

[4]    Moreover, to the extent that Plaintiff seeks monetary damages his claims may be barred by the doctrine of prosecutorial immunity.  "[P]rosecutorial immunity is a form of absolute immunity that shields [a] prosecutor acting in the role of an advocate in connection with a judicial proceeding . . . for all acts intimately associated with the judicial phase of the criminal process."  *Carroll v. Trump*, 23-CV-1045, 23-CV-1146, 2023 WL 8608724, at *1 n.4 (2d Cir. Dec. 13, 2023) (quoting *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)) (internal quotation marks omitted).

justice so requires.").  An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[5]

Although I have serious doubts about whether Plaintiff can amend to assert an actionable claim, given that this is Plaintiff's initial complaint and out of an abundance of caution, I recommend that Plaintiff be permitted to amend his Complaint.

If Plaintiff chooses to file an amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'"  *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any amended complaint, Plaintiff must clearly set forth

---

[5]      *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, Plaintiff is informed that any such amended complaint will replace the existing Complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

ACCORDINGLY, it is

**ORDERED** that Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court (1) provide the Superintendent of the facility that Plaintiff has designated as his current location with a copy of Plaintiff's inmate authorization form (Dkt. No. 3) and notify that official that Plaintiff has filed this action and is required to pay the Northern District of New York the entire statutory filing fee of $350.00 in installments, over time, pursuant to 28 U.S.C. § 1915; and (2) provide a copy of Plaintiff's inmate authorization form (Dkt. No. 3) to the Financial Deputy of the Clerk's office; and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITH LEAVE TO REPLEAD** Plaintiff's Complaint (Dkt. No. 1); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this order, report, and recommendation on the docket of this case and serve a copy upon the parties in accordance with the local rules.[6]

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[7]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).


Dated: December  21 , 2023
      Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[6]    The Clerk shall also provide Plaintiff with copies of all unreported decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

[7]    If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 5185047
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

David J. CASH, Plaintiff,

v.

BERNSTEIN, MD, Defendant.

No. 09 Civ.1922(BSJ)(HBP).
|
Oct. 26, 2010.


*REPORT AND RECOMMENDATION*[1]

PITMAN, United States Magistrate Judge.

**\*1** TO THE HONORABLE BARBARA S. JONES, United States District Judge,


I. *Introduction*

By notice of motion dated March 4, 2010 (Docket Item 11), defendant moves pursuant to 28 U.S.C. § 1915(g) to revoke plaintiff's *in forma pauperis* ("IFP") status on the ground that plaintiff has previously had at least three Section 1983 actions dismissed as frivolous, malicious or failing to state a claim upon which relief could be granted, and has not shown that he is in imminent danger of serious physical injury. Defendant further seeks an order directing that the action be dismissed unless plaintiff pays the full filing fee within thirty (30) days. For the reasons set forth below, I respectfully recommend that defendant's motion be granted.


II. *Facts*

Plaintiff, a sentenced inmate in the custody of the New York State Department of Correctional Services, commenced this action on or about January 12, 2009 by submitting his complaint to the Court's Pro Se office. Plaintiff alleges, in pertinent part, that he has "a non-healing ulcer that is gane green [*sic* ]" and that defendant Bernstein "did not want to treat the ulcer right" (Complaint, dated March 3, 3009 (Docket Item 2) ("Compl."), at 3).

The action was originally commenced against two defendants —Dr. Bernstein and Dr. Finkelstein. The action was dismissed

as to Dr. Finkelstein because the complaint contained no allegations whatsoever concerning Dr. Finkelstein (Order dated February 18, 2010 (Docket Item 9)).

On March 4, 2010, the sole remaining defendant—Dr. Bernstein—filed the current motion. Plaintiff failed to submit a response. Accordingly, on August 20, 2010, I issued an Order advising plaintiff that if he wished to oppose the motion, he must submit his opposition by September 15, 2010 and that after that date I would consider the motion fully submitted and ripe for decision (Order dated August 20, 2010 (Docket Item 15)). The only submission plaintiff has made in response to my Order is a multi-part form issued by the New York State Department of Correctional Services entitled "Disbursement or Refund Request."[2] By this form, plaintiff appears to request that the New York State Department of Correctional Services pay the filing fee for this action. The form is marked "Denied."


III. *Analysis*

28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged. Although an indigent, incarcerated individual need not prepay the filing fee at the time at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts. 28 U.S.C. § 1915(b); *Harris v. City of New York,* 607 F.3d 18, 21 (2d Cir.2010). To prevent abuse of the judicial system by inmates, paragraph (g) of this provision denies incarcerated individuals the right to proceed without prepayment of the filing fee if they have repeatedly filed meritless actions, unless such an individual shows that he or she is in imminent danger of serious physical injury. *See* Ortiz v. McBride, 380 F.3d 649, 658 (2d Cir.2004) ("[T]he purpose of the PLRA ... was plainly to curtail what Congress perceived to be inmate abuses of the judicial process."); Nicholas v. Tucker, 114 F.3d 17, 19 (2d Cir.1997). Specifically, paragraph (g) provides:

> **\*2** In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility,

brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

If an inmate plaintiff seeks to avoid prepayment of the filing fee by alleging imminent danger of serious physical injury, there must be a nexus between the serious physical injury asserted and the claims alleged. *Pettus v. Morgenthau,* 554 F.3d 293, 298 (2d Cir.2009).

Section 1915(g) clearly prevents plaintiff from proceeding in this action without prepayment of the filing fee. The memorandum submitted by defendant establishes that plaintiff has had his IFP status revoked on at least four prior occasions as a result of his repeatedly filing meritless actions.

- In 2005, plaintiff commenced an action in the United States District Court for the Northern District of New York seeking to have his infected leg amputated. *Nelson³ v. Lee,* No. 9:05–CV–1096 (NAM)(DEP), 2007 WL 4333776 (N.D.N.Y. Dec. 5, 2007). In that matter, the Honorable Norman A. Mordue, Chief United States District Judge, accepted and adopted the Report and Recommendation of the Honorable David E. Peebles, United States Magistrate Judge, that plaintiff had brought three or more prior actions that had been dismissed for failure to state a claim and that plaintiff's IFP status should, therefore, be revoked. 2007 WL 4333776 at *1–*2.

- In *Nelson v. Nesmith,* No. 9:06–CV–1177 (TJM)(DEP), 2008 WL 3836387 (N.D.N.Y. Aug. 13, 2008), plaintiff again filed an action concerning the medical care he was receiving for his left leg. The Honorable Thomas J. McAvoy, United States District Judge, accepted the Report and Recommendation of Magistrate Judge Peebles, and revoked plaintiff's IFP status and dismissed the action on the ground that plaintiff had previously commenced at least three actions that had

been dismissed on the merits. 2008 WL 3836387 at *1, *7.

- In *Nelson v. Spitzer,* No. 9:07–CV–1241 (TJM) (RFT), 2008 WL 268215 (N.D.N.Y. Jan. 29, 2008), Judge McAvoy again revoked plaintiff's IFP status on the ground that plaintiff had commenced three or more actions that constituted "strikes" under Section 1915(g) and had not shown an imminent threat of serious physical injury. 2008 WL 268215 at *1–*2.

- Finally, in *Nelson v. Chang,* No. 08–CV–1261 (KAM)(LB), 2009 WL 367576 (E.D.N.Y. Feb. 10, 2009), the Honorable Kiyo A. Matsumoto, United States District Judge, also found, based on the cases discussed above, that plaintiff had exhausted the three strikes permitted by Section 1915(g) and could not proceed IFP in the absence of a demonstration of an imminent threat of serious physical injury. 2009 WL 367576 at *2–*3.

**\*3** As defendant candidly admits, there is one case in which plaintiff's leg infection was found to support a finding of an imminent threat of serious physical injury sufficient to come within the exception to Section 1915(g). *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2008 WL 4401874 at *2 (N.D.N.Y. Sept. 24, 2008). Nevertheless, summary judgment was subsequently granted for defendants in that case, and the complaint was dismissed. Judge Mordue concluded that there was no genuine issue of fact that plaintiff had received adequate medical care for his leg wound and that the failure of the leg to heal was the result of plaintiff's own acts of self-mutilation and interference with the treatment provided. *Nelson v. Scoggy,* No. 9:06–CV–1146 (NAM)(DRH), 2009 WL 5216955 at *3–*4 (N.D.N.Y. Dec. 30, 2009). [4]

In light of the foregoing, there can be no reasonable dispute that plaintiff has exceeded the three "strikes" allowed by Section 1915(g) and that he cannot, therefore, proceed here without prepaying the filing fee unless he demonstrates an imminent threat of serious physical injury. Plaintiff has declined to attempt to make this showing in response to defendant's motion, and the only suggestion in the record of serious physical injury is the bare statement in the complaint that plaintiff "need[s] to go back to a wound speci [a]list before the gane green [*sic* ] kills [him]" (Compl. at 5). "However, unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in

imminent danger of serious physical harm." *Merriweather v. Reynolds,* 586 F.Supp.2d 548, 552 (D.S.C.2008), *citing Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) *and White v. Colorado,* 157 F.3d 1226, 1231–32 (10th Cir.1998); *see also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (imminent danger exception to Section 1915(g) requires "specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"). Given the plaintiff's history, as set forth in the cases described above, I conclude that this vague statement is insufficient to support a finding that plaintiff is in imminent danger of serious physical injury. [5]

### IV. *Conclusion*

Accordingly, for all the foregoing reasons, I find that plaintiff has had three or more prior actions dismissed as being frivolous, malicious or failing to state a claim and that plaintiff's *in forma pauperis* status should, therefore, be revoked. If your Honor accepts this recommendation, I further recommend that the action be dismissed unless plaintiff pays the filing fee in full within thirty (30) days of your Honor's final resolution of this motion.

### V. *OBJECTIONS*

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. *See also* Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Barbara S. Jones, United States District Judge, 500 Pearl Street, Room 1920, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Jones. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS *WILL* RESULT IN A WAIVER OF OBJECTIONS AND *WILL* PRECLUDE APPELLATE REVIEW. *Thomas v. Arn,* 474 U.S. 140, 155 (1985); *United States v. Male Juvenile,* 121 F.3d 34, 38 (2d Cir.1997); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298, 300 (2d Cir.1992); *Wesolek v. Canadair Ltd.,* 838 F.2d 55, 57–59 (2d Cir.1988); *McCarthy v. Manson,* 714 F.2d 234, 237–38 (2d Cir.1983).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 5185047

### Footnotes

1   At the time the action was originally filed, the Honorable Leonard B. Sand, United States District Judge, granted plaintiff's application for *in forma pauperis* status based on plaintiff's *ex parte* submission (Docket Item 1). Although the present application seeking to revoke plaintiff's *in forma pauperis* status is non-dispositive, I address it by way of a report and recommendation to eliminate any appearance of a conflict between the decision of a district judge and that of a magistrate judge.

2   Plaintiff sent this form directly to my chambers, and it has not been docketed by the Clerk of the Court. The form will be docketed at the time this Report and Recommendation is issued.

3   It appears that plaintiff uses the names David J. Cash and Dennis Nelson interchangeably. In his complaint in this matter, plaintiff states that the Departmental Identification Number, or DIN, assigned to him by the New York State Department of Correctional Services ("DOCS") is 94–B–0694 (Compl. at 7). DOCS inmate account records submitted by plaintiff in connection with his application for IFP status indicate that DIN 94–B–0694 is assigned to Dennis Nelson. In addition, the DOCS form described in footnote two bears the docket number of this action, but is signed in the name of Dennis Nelson and was sent in an envelope identifying the sender as Dennis Nelson. A subsequent action has been filed in this Court in which the plaintiff identifies

himself as Dennis Nelson but lists his DIN as 94–B–0694, the same DIN used by plaintiff here. Finally, plaintiff has submitted nothing to controvert the assertion in defendant's papers that David Cash and Dennis Nelson are the same person. In light of all these facts, I conclude that David Cash and Dennis Nelson are both names used by plaintiff.

4 Although the form complaint utilized by plaintiff expressly asks about prior actions involving the same facts, plaintiff disclosed only the *Scoggy* action and expressly denied the existence of any other actions relating to his imprisonment (Compl. at 6).

5 Plaintiff has sent me several letters describing his wound and its symptoms in detail, and I have no doubt that the wound is serious. However, in granting summary judgment dismissing an action last year based on the same allegations, Judge Mordue of the Northern District found that there was no genuine issue of fact that plaintiff's own conduct was responsible for the ineffectiveness of the treatment he was provided:

> Furthermore, to the extent that Nelson's medical treatment was delayed, much of the delay was due to his own refusal to cooperate with medical staff and his self-mutilations. Nelson's actions to thwart the medical treatment of his wound cannot be construed as interference or indifference by anyone else.... [T]he medical treatment Nelson received complied with constitutional guarantees as it was appropriate, timely, and delayed only by Nelson's own actions.

*Nelson v. Scoggy, supra,* 2009 WL 5216955 at *4.

Given plaintiff's total failure to respond to the pending motion and his failure to even deny that he is actively thwarting treatment of his wound, it would be sheer speculation for me to conclude that he is in imminent danger of a serious injury as a result of defendant's conduct.

---

**End of Document**        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment
Distinguished by  U.S. v. $6,787.00 in U.S. Currency,  N.D.Ga.,  February 13, 2007

1999 WL 1067841
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Francisco AGUILAR, Plaintiff,
v.
UNITED STATES OF AMERICA, Defendant.

Nos. 3:99–MC–304 (EBB), 3:99–MC–408 (EBB).
|
Nov. 8, 1999.

*Dismissal of Plaintiff's Complaints*

BURNS, Senior J.

 **\*1**  Francisco Aguilar, pro se, seeks leave to proceed in forma pauperis ("IFP") to press two meritless complaints against the government, which is prosecuting related civil forfeiture actions against his properties. Although Aguilar is otherwise financially eligible, the court dismisses these complaints sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B) because the purported claims are frivolous, baseless and irremediable.

*Background*

Would-be plaintiff Aguilar is no stranger to this court. He is currently serving a forty-year sentence for drug trafficking at the federal penitentiary in Leavenworth, Kansas. *See United States v. Tracy,* 12 F.3d 1186, 1189 (2d Cir.1993) (affirming conviction and sentence). In connection with his conviction for narcotics offenses, the government filed civil forfeiture actions pursuant to 21 U.S.C. § 881(a) in 1990 and 1991 against four of Aguilar's Connecticut properties, which have since been sold. With the help of CJA-appointed counsel, Aguilar has vigorously defended each of these four actions, three of which remain pending before this court, and are scheduled for trial in January 2000. [1]

Now Aguilar seeks to take the offensive by filing these purported claims against the government, and serving the current property owners as well as the Assistant United States Attorney who is prosecuting the related forfeiture cases. This court denied without prejudice Aguilar's initial complaint, which was erroneously captioned "United States v. One Parcel Of Property Located At 414 Kings Hwy.," one of the cases already docketed and then pending. *See* Order of June 15, 1999. Upon refiling an amended complaint (the "Amended Complaint") with the appropriate caption, Aguilar also filed a second complaint (the "Second Complaint"), seeking the same relief and asserting essentially the same claims against the government for bringing the other three forfeiture cases. The clerk returned these pleadings because Aguilar failed to complete the IFP forms. *See* Order of August 25, 1999. After Aguilar cured these pleading deficiencies, miscellaneous docket numbers were assigned to the complaints.

In Aguilar's Amended Complaint—the one originally filed against his own property at 414 Kings Highway—Aguilar seeks return of the property, compensatory damages and $100,000,000 in punitive damages "to deter the United States of America from committing a similar Abuse of Power." Aguilar pleads his case in four "Articles," asserting sundry state and federal "constitutional" claims, including conversion, false pretenses, mail fraud, and breach of fiduciary duty. The Amended Complaint also suggests an allegation that the government falsified and deliberately omitted known material facts from its probable cause affidavit in "disregard" of 19 U.S.C. § 1615, the statute outlining the burden of proof in administrative forfeiture proceedings.

The Second Complaint—the one related to the government's seizure of the other three properties—seeks similar equitable and monetary relief, including return of the properties, compensation for "suffering," "usurpation," denial of his use and enjoyment of the properties and lost rents, and one billion dollars in punitive damages. Liberally construed, the Second Complaint simply repeats the claims of the Amended Complaint except for one additional allegation: that Aguilar was entitled to, and did not receive, a hearing prior to the seizure and sale of his properties.

*Discussion*

A.  *§ 1915(e)(2)(B) Standards*
 **\*2**  The Prisoner Litigation Reform Act ("PLRA") mandates dismissal of an IFP action if it: "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

from such relief." 28 U.S.C. § 1915(e)(2)(B) (as amended in 1996). Prior to the adoption of the PLRA, district courts had discretion to dismiss frivolous actions; now they are required to do so. *See* Pub.L. 104–134, 110 Stat. 1321 (1996) (making dismissal of frivolous actions mandatory, and also requiring dismissal for failing to state a claim or seeking damages from an immune defendant). Because Aguilar's claims qualify for dismissal under all three of these prongs, the standards for each are set out in turn.

### 1. *Frivolous or Malicious*

A complaint is frivolous if "it lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989) (interpreting § 1915(d), later redesignated as § 1915(e)(2)(B)(i), to preclude "not only the inarguable legal conclusion, but also the fanciful factual allegation"). Factual frivolity occurs where "the 'factual contentions are clearly baseless,' such as when allegations are the product of delusion or fantasy." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir.1998) (quoting Neitzke, 490 U.S. at 327, 109 S.Ct. at 1833). Legal frivolity, by contrast, occurs where "the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston,* 141 F.3d at 327 (internal quotes and citation omitted); *see also* Tapia–Ortiz v. Winter, 185 F.3d 8, 11 (2d Cir.1999) (upholding dismissal as frivolous where "[t]he complaint's conclusory, vague, and general allegations ... d[id] not [ ] suffice to establish" plaintiff's claims).

In addition to frivolous claims, the court must also dismiss any malicious claims, i.e., where "[t]he manifest purpose of appellant's complaint [i]s not to rectify any cognizable harm, but only to harass and disparage." Tapia–Ortiz, 185 F.3d at 11.

### 2. *Failure To State A Claim*

An IFP action must also be dismissed sua sponte if it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see also* Star v. Burlington Police Dep't, 189 F.3d 462, 1999 WL 710235 (2d Cir.1999) (summarily affirming dismissal made pursuant to § 1915(e)(2)(B)(ii)

of purported due process challenge that failed to state a claim). As in a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a § 1915(e)(2)(B)(ii) dismissal is warranted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

**\*3** Pro se complaints, such as these, however, must be read broadly, *see* Haines v. Kerner, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), and may not be dismissed "simply because the court finds the plaintiff's allegations unlikely." Denton v. Hernandez, 504 U.S. 25, 33, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1982) (construing pre-PLRA complaint as frivolous). Therefore,

> a pro se plaintiff who is proceeding in forma pauperis should be afforded the same opportunity as a pro se fee-paid plaintiff to amend his complaint prior to its dismissal for failure to state a claim [under § 1915(e)(2)(B)(ii)], unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim.

Gomez v. USAA Federal Sav. Bank, 171 F.3d 794, 796 (2d Cir.1999) (per curiam) (vacating § 1915(e)(2)(B)(ii) dismissal where "the district court did not give th[e] pro se litigant an opportunity to amend his complaint, and because [the court] cannot rule out the possibility that such an amendment will result in a claim being successfully pleaded").

### 3. *Relief Against An Immune Defendant*

Dismissal of an IFP case is also required where plaintiff seeks monetary damages against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii); *see also,* Spencer v. Doe, 139 F.3d 107, 111 (2d Cir.1998) (affirming dismissal pursuant to § 1915(e)(2)(B)(iii) of official-capacity claims in § 1983 civil rights action because

"the Eleventh Amendment immunizes state officials sued for damages in their official capacity"). Here, even if Aguilar's claims had any merit, the complaints must be dismissed nevertheless because each seeks monetary damages from the United States, which is immune from such relief. *See Presidential Gardens Assocs. v. United States,* 175 F.3d 132, 139 (2d Cir.1999) (noting "[t]he sovereign immunity of the United States may only be waived by federal statute").

### B. *Dismissal Standards Applied*

Aguilar's complaints are devoid of any arguable basis in law or fact. Most of his factual allegations—to the extent they are even comprehensible—are conclusory, vague and baseless. For example, he purports to allege: "The United States of America has misused its power against the Francisco Aguilar's Intangible Rights." (Amended Complaint at 2); and "The United States of America overpassed its bound of its authority and make a tyrannic use of its powers." (Second Complaint at 4). Even the Second Circuit has recognized Aguilar's prior handiwork to be "so indisputably lacking in merit as to be frivolous within the meaning of 28 U.S.C. § 1915(e)." *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 97–6004 (2d Cir. April 23, 1997) (mandate [Doc. No. 167] dismissing appeal of Aguilar's motion to enjoin state default proceedings).

Only two allegations asserted by Aguilar are even arguably actionable: the lack-of-probable-cause argument in the Amended Complaint and the due process claim in the Second Complaint. Both of these, however, must be dismissed because each fails to state a claim for which relief may be granted.

### 1. *Probable Cause*

**\*4** The one potentially cogent legal claim that can be derived from a liberal reading of the Amended Complaint has already been conclusively decided by the court and is therefore barred from relitigation. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158 (denying lack-of-probable-cause argument in motion to dismiss [Doc. No. 64] in 1993, and in motions for summary judgment [Doc. Nos. 55, 96] in 1996). Here again, Aguilar reiterates his allegation that the government's affidavit in support of probable cause was tainted because it failed to disclose that the 414 Kings Highway property was subject to a mortgage held by People's Bank, and therefore could not have been purchased with funds traceable to drug sales.

After the government voluntarily dismissed that forfeiture action, this court initially ordered the sale proceeds of the property disbursed to Aguilar. *See id.,* Order of Oct. 25, 1996 [Doc. No. 151]. The bank appealed the order and, during the pendency of the appeal, secured a default judgment in state court against Aguilar. *See People's Bank v. Aguilar,* No. CV–96–0337761–S (Conn.Super.Ct.1997). On the Bank's appeal from this court's disbursal of proceeds to Aguilar, the Second Circuit reversed and remanded. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* 128 F.3d 125, 128 (2d Cir.1997). On remand, in accordance with the Second Circuit mandate, this court disbursed the proceeds from the sale of 414 Kings Highway to the bank in partial satisfaction of Aguilar's debt owed on the defaulted mortgage. *See United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158, 1999 WL 301704 (D.Conn. May 11, 1999).

Because the lack-of-probable-cause claim, perfunctorily adverted to in Aguilar's otherwise meritless Amended Complaint, has already been addressed in the *414 Kings Highway* forfeiture case, the court will not consider it again. As such, it must be dismissed because it fails to state a claim for which this court could grant further relief.

### 2. *Due Process*

In addition to his now-stale probable cause allegation about 414 Kings Highway, Aguilar claims in the Second Complaint that he was wrongfully denied a hearing prior to the seizure and sale of the other three properties. However, the constitutional right to a preseizure hearing in civil forfeiture proceedings was not recognized until 1993, two years after the seizure in this case. *See United States v. James Daniel Good Real Property,* 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (holding that Fifth Amendment Due Process protections apply to civil forfeiture proceedings against real property). Even if such due process protections applied retroactively, Aguilar's challenge to the sale of the properties would lack merit because exigent circumstances required their interlocutory sale.

In civil forfeiture proceedings "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture." *Id.* at 62, 114 S.Ct. at 505; *see also United States v. One Parcel Of Property Located At 194 Quaker*

*Farms Rd.*, 85 F.3d 985, 988 (2d Cir.1996) ("[a]bsent exigent circumstances, a hearing, with notice to record owners, is held before seizure."). "To establish exigent circumstances, the Government must show that less restrictive measures— i.e., a lis pendens, restraining order, or bond—would not suffice to protect the Government's interest in preventing the sale, destruction, or continued unlawful use of the 🚩real property." *Id.* at 62, 114 S.Ct. at 505.

**\*5**  Aguilar's properties addressed in the Second Complaint were seized because there was probable cause that each had been used to facilitate the offenses for which he was convicted. *See* 🚩21 U.S.C. § 881(a)(7) (1999). This civil forfeiture statute authorizes interlocutory sale of seized properties by two methods, which are incorporated by reference into the statute. *See* 🚩21 U.S.C. § 881(b) (authorizing seizure of property subject to civil forfeiture upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims; 🚩21 U.S.C. § 881(d) (authorizing seizure and summary sale governed by the customs laws codified in the Tariff Act of 1930, 19 U.S.C. §§ 1602–1619). Though the source of authority differs, the standards for sale under each are virtually indistinguishable.

Rule E(9)(b) of the Maritime Rules permits the interlocutory sale of seized property if such property

> is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action, or if the expenses of keeping the property is [sic] excessive or disproportionate, or if there is unreasonable delay in securing the release of property....

Supplemental Rule for Certain Admiralty and Maritime Claims E(9)(b). Section 1612(a) of the customs laws, by contrast, provides for seizure and summary sale whenever it appears that such property

> is liable to perish or to waste or to be greatly reduced in value by keeping, or

> that the expense of keeping the same is disproportionate to the value thereof....

19 U.S.C. § 1612(a) (1999).

Here, the Chief Deputy United States Marshal certified that the properties located at both 2030–32 Main St., Bridgeport (No. 5:90–cv–544), and 8 Drumlin Rd., Westport (No. 5:90–cv–545), were abandoned and therefore subject to vandalism, deterioration and depreciation. *See* 2/20/91 Declaration in Support of Motion for Interlocutory Sale [Doc. Nos. 28 (5:90–cv–544), 31 (5:90–cv–545) ] at ¶¶ 4, 5. The marshal also certified that the mortgage obligations exceeded by over $ 1,000 per month the rental income of the 2034–38 Main St., Bridgeport (No. 5:90–cv–546), property, which was several months in arrears and had little or no equity. *See* 2/21/90 Declaration in Support of Motion for Interlocutory Sale [Doc. No. 27 (5:90–cv–546) ] at ¶ 4. This court found these reasons sufficiently exigent to order the interlocutory sales. *See* 8/1/90 Order for an Interlocutory Sale [Doc. Nos. 34 (5:90–cv–544), 50 (5:90–cv–545), 31 (5:90–cv–546) ]. Interlocutory sale was thus warranted under both Rule E(9)(b) and § 1612(a) because the two abandoned properties were liable to deteriorate or lose value and the mortgage liabilities of the rented property were disproportionate in comparison to its value. *Cf. United States v. Esposito*, 970 F.2d 1156, 1161 (2d Cir.1992) (vacating order of interlocutory sale of forfeited home where "there was no finding that t[he amount expended for maintenance and repairs] was excessive or disproportionate").

**\*6**  Aguilar's claim that he was wrongfully denied an opportunity to be heard prior to the sale of his properties is therefore not a cognizable due process challenge because the exigency of the properties' abandonment and disproportionate cost of upkeep required their interlocutory sale. Thus, sua sponte dismissal is warranted because Aguilar's due process claim fails to state a remediable cause of action.

### 3. *Other Claims*

The remainder of Aguilar's claims are frivolous and can be disposed of readily. To the extent Aguilar's claim invoking 🚩19 U.S.C. § 1615 can be construed as challenging the constitutionality of shifting the burden to the claimant upon the government's showing of probable cause, the Second Circuit has "h[e]ld that it does not violate due process to place the burden of proving an innocent owner affirmative

defense on the claimant." 🚩 *194 Quaker Farms Rd.,* 85 F.3d at 987. In addition, the tort claims for false pretenses and conversion are not actionable as these are intentional torts to which the limited waiver of sovereign immunity of the Federal Tort Claims Act ("FTCA") is inapplicable.

*See* 28 U.S.C. § 2680(h); *see also* 🚩 *Bernard v. United States,* 25 F.3d 98, 104 (2d Cir.1994) ("the FTCA does not authorize suits for intentional torts based on the actions of Government prosecutors"). Furthermore, because the United States government is not a fiduciary and owes no associated duties to Aguilar, his breach of fiduciary duty allegation against the government fails to state a claim. Finally, Aguilar also fails to state a valid mail fraud claim as that criminal code provision, 🚩 18 U.S.C. § 1341, may only be prosecuted by the government, not against it.

*Conclusion*

For the foregoing reasons, Aguilar's complaints [Nos. 3:99–mc–304 and 3:99–mc–408] are dismissed pursuant to 🚩 28 U.S.C. § 1915(e)(2)(B) because they present frivolous allegations, none of which state a cognizable claim, and seek monetary relief from an immune defendant. Because the court cannot definitively rule out the possibility that amendment to the pleadings might result in an actionable claim, *see* 🚩 *Gomez,* 171 F.3d at 796, these dismissals are made without prejudice and may be replead after the conclusion of the related forfeiture proceedings.

**All Citations**

Not Reported in F.Supp.2d, 1999 WL 1067841

## Footnotes

1    *See United States v. One Parcel Of Property Located At 2030–32 Main St.,* No. 5:90–cv–544(EBB) (pending); *United States v. One Parcel Of Property Located At 8 Drumlin Rd.,* No. 5:90–cv–545 (EBB) (pending); *United States v. One Parcel Of Property Located At 2034–38 Main St.,* No. 5:90–cv–546(EBB) (pending); *see also United States v. One Parcel Of Property Located At 414 Kings Hwy.,* No. 5:91–cv–158(EBB) (closed).

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 23 of 73

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

2020 WL 1643392
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Melania PERVU and Nicolae Pervu, Plaintiffs,
v.
CITY OF ONEONTA, David Merzig, Defendants.

6:19-CV-00861 (MAD/TWD)
|
Signed 04/02/2020

**Attorneys and Law Firms**

MELANIA PERVU, NICOLAE PERVU, 26 Maple Street,
Oneonta, New York 13820, Plaintiff pro se.

OF COUNSEL: APRIL J. LAWS, ESQ., COREY A.
RUGGIERO, ESQ., JOHNSON & JOHNSON, LLC, 648
Plank Road, Suite 204, Clifton Park, New York 12020,
Attorneys for Defendants.

**MEMORANDUM-DECISION AND ORDER**

Mae A. D'Agostino, U.S. District Judge:

**I. INTRODUCTION**

**\*1** On June 17, 2019, *pro se* plaintiffs Melania and
Nicolae Pervu ("Plaintiffs") commenced this action against
Defendants David Merzig and the City of Oneonta
("Defendants"). *See* Dkt. No. 1 at 1. In their complaint,
Plaintiffs' only remotely cognizable allegation claimed
that Defendants had falsely classified Plaintiffs' apartment
building, located at 195 Main Street, Oneonta, New York
13820, as uninhabitable. *See* Dkt. No. 1 at 3. However, in
their response to Defendants' motion to dismiss, Plaintiffs
asserted a litany of additional claims, despite not seeking to
amend their complaint. These claims include a ⚑ 42 U.S.C.
§ 1983 violation for discrimination, defamation, perjury, false
statements, witness tampering, and "a very clear case of
judicial misconduct" during state court proceedings initiated
by Defendants. *See* Dkt. No. 18 at 1-2.

Currently before the Court is Defendants' motion to dismiss
pursuant to Federal Rules of Procedure 8(a) and 12(b)(6). *See*
*generally* Dkt. No. 16-1.

**II. BACKGROUND**

Plaintiffs have owned the property formerly known as the
Oneonta Hotel since May 22, 2015 (the "Property"), and,
until February 2019, ran it as an apartment building for low-
income [1] residents. *See* Dkt. No. 1 at 3; Dkt. No 16-1 at
11. The building did not have a Certificate of Compliance, a
prerequisite for rental occupancy, when Plaintiffs purchased
it, as it was in some state of disrepair. *See* Dkt. No. 16-1
at 7. Plaintiffs failed to remedy the violations preventing
them from obtaining this certificate, and on January 5, 2017,
the City of Oneonta's Board of Public Service (the "Board")
deemed the building to be "unsafe" and "order[ed] immediate
repair." Dkt. No. 16-1 at 8. The Board also resolved that
if Plaintiffs failed to make the repairs within thirty days, it
would issue an order to vacate the Property. Dkt. No. 16-1 at 8.

On September 14, 2017, more than nine months after the
Board's resolutions, the City's Code Enforcement Officer
found multiple violations, including the following: "extensive
water damage (including active water leaks), inoperable
carbon monoxide detectors, inoperable and/or missing smoke
detectors, incorrectly located smoke and/or carbon dioxide
detectors and inoperable lights and/or emergency signage."
Dkt. No. 16-1 at 9. The Code Enforcement Officer notified
the Board, and on November 2, 2017, the Board moved to
order that the building be vacated, but agreed not to take
further action until after April 30, 2018, "so as to allow the
low-income tenants to find substitute housing" and to give
Plaintiffs one last chance to remedy the violations. Dkt. No.
16-1 at 9. On March 8, 2018, the City of Oneonta circulated a
notice to tenants and funding agencies declaring the building
"to be unsafe for occupancy, due to significant violations of
the New York State Housing and Building Code" and advising
tenants to vacate the building "[u]nless the landlord brings
the property into full building code compliance by April 30,
2018[.]" Dkt. No. 1 at 5.

**\*2** On June 26, 2018, after Plaintiffs had continued to
rent out the Property in violation of the Board's May 15,
2018 order to vacate, Defendants filed a petition in Otsego
County Supreme Court pursuant to Sections 302, 303, and
309 of the New York State Multiple Dwelling Law. *See* Dkt.
No. 16-1 at 10. On August 14, 2018, Plaintiffs answered
the petition and brought a counterclaim against the City of
Oneonta for violation of their due process rights under the
Fifth and Fourteenth Amendments. *See* Dkt. No. 16-1 at 10.

On September 7, 2018, the Otsego County Supreme Court held an evidentiary hearing, and three days later issued an order requiring Plaintiffs to remedy all code violations by January 11, 2019, or "immediately be in Contempt of the Court." Dkt. No. 16-1 at 10.

However, after another inspection on January 15, 2019, the City of Oneonta found "numerous remaining Code violations such as extensive water damage and active leaks and inoperable or missing smoke detectors, as well as numerous other health and safety violations." Dkt. No. 16-1 at 11. Accordingly, in a February 5, 2019 hearing, the state court ordered all tenants to vacate the building by February 7, 2019. *See* Dkt. No. 16-1 at 11.

According to Plaintiffs, "the city Oneonta attorney David Merzig and his wife Margie Merzig, Chair of the City Board, decided to act against me, my family, and my tenants." Dkt. No. 1 at 3. Indeed, Plaintiffs allege that "[t]he city administration represented by David Merzig us[ed] false statements, weaponized the code enforcement office and using false pretenses, asked the court to evict by force my tenants[.]" Dkt. No. 1 at 3. Plaintiffs further allege that these acts, among others mentioned in the complaint, constitute "discrimination against [their] [immigrant] status, selective enforcement, defamation, and slander" and thus violate Section 1983. Dkt. No. 18 at 1. Specifically, Plaintiffs claim that Defendants used misleading photographs as evidence to obtain the warrant of eviction, and that their purpose "has been nothing but discriminatory, as their real interest was not [t]o work with us but to do everything in order to shut our property down." *Id.* at 4.

In their motion to dismiss, Defendants argue that, even under the more liberal pleading standard granted to *pro se* plaintiffs, the complaint fails to allege any cognizable injury under Section 1983. *See* Dkt. No. 16-1 at 12-13. Further, Defendants assert that Plaintiffs' complaint fails to include any factual statements or claims that would satisfy Rule 8's pleading standard. *See id.* at 14 (quoting Fed. R. Civ. P. 8(a)(2)). Regardless of the complaint's sufficiency, Defendants also argue that Plaintiffs claims are barred by collateral estoppel because "Plaintiffs have a full and fair opportunity to litigate their counterclaims in the state court proceeding." Dkt. No. 19 at 11. In short, Defendants claim that "Plaintiffs are merely unhappy with the rulings by the state court judge [who] direct[ed] Plaintiffs to either repair the building or vacate the tenants." Dkt. No. 16-1 at 15.

Currently before the Court is Defendants' motion to dismiss.

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

**\*3** Furthermore, "[w]hen deciding a motion to dismiss, the [c]ourt's review is ordinarily limited to 'the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.' " *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 379 (S.D.N.Y. 2013) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) and citing *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)). Accordingly, "[w]hen matters outside the pleadings are presented [in support of or] in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment ... and afford all parties the opportunity to present supporting material." *Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) (alteration and internal quotation marks omitted). A court may, under appropriate circumstances, "consider material outside of the pleadings on a motion to dismiss." *Chamberlain*, 986 F. Supp. 2d at 379 (citing *Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011)). If, for example, the record clearly demonstrates "that no dispute exists regarding the authenticity or accuracy of the document[s]," *Faulkner*, 463 F.3d at 134, then "a court may consider documents upon the terms and effect of which the complaint relies heavily—that is, 'integral' documents —without converting a motion to dismiss into a summary

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 25 of 73

judgment motion," 🚩 *Chamberlain*, 986 F. Supp. 2d at 379
(citing 🚩 *Chambers*, 282 F.3d at 153).

## B. Abstention Under 🔲 *Younger v. Harris*, 401 U.S. 37 (1971)

Federal courts have "no more right to decline the exercise of
jurisdiction which is given, than to usurp that which is not
given." 🚩 *Cohens v. Virginia*, 19 U.S. 264, 404 (1821). In
*Younger*, the Supreme Court recognized a limited exception
to this general rule, holding that federal courts should abstain
from exercising jurisdiction over suits to enjoin pending
state criminal proceedings, absent a showing of bad faith,
harassment, or a patently invalid state statute. *See* 🚩 *Younger
v. Harris*, 401 U.S. 37, 53-54 (1971) (citation omitted).

*Younger* is not based on an Article III requirement, but
instead is a "prudential limitation on the court's exercise of
jurisdiction grounded in equitable considerations of comity."

🚩 *Spargo v. New York State Comm'n on Judicial Conduct*,
351 F.3d 65, 74 (2d Cir. 2003) (citations omitted). The
rationale behind *Younger* was set forth by the Second Circuit
in *Spargo*:

> "Our Federalism" in its ideal form, as the Supreme
> Court explained in *Younger*, strives towards "a system
> in which there is sensitivity to the legitimate interests
> of both State and National Governments, and in which
> the National Government, anxious though it may be to
> vindicate and protect federal rights and federal interests,
> always endeavors to do so in ways that will not unduly
> interfere with the legitimate activities of the States." In
> recognition of this balance of interests, *Younger* generally
> prohibits courts from "taking jurisdiction over federal
> constitutional claims that involve or call into question
> ongoing state proceedings" so as to avoid unnecessary
> friction. Giving states "the first opportunity ... to correct
> their own mistakes" when there is an ongoing state
> proceeding serves the vital purpose of "reaffirm[ing] the
> competence of the state courts," and acknowledging the
> dignity of states as co-equal sovereigns in our federal
> system.

🚩 *Spargo*, 351 F.3d at 75 (internal quotations and citations
omitted).

Although *Younger* itself dealt only with a pending criminal
proceeding, the "*Younger* abstention has been extended to
civil proceedings, ... and state administrative proceedings[.]"

🚩 *Cecos Int'l, Inc. v. Jorling*, 895 F.2d 66, 70 (2d Cir.
1990) (internal citations omitted). As noted by the Sixth
Circuit, "*Younger* cases generally have a common procedural
posture." 🚩 *Devlin v. Kalm*, 594 F.3d 893, 894 (6th Cir.
2010). "In the typical *Younger* case, the federal plaintiff is a
defendant in ongoing or threatened state court proceedings
seeking to enjoin continuation of those state proceedings.
Moreover, the basis for the federal relief claimed is generally
available to the would-be federal plaintiff as a defense in the
state proceedings." 🚩 *Id.* at 894-95 (quoting 🚩 *Crawley v.
Hamilton Cty. Comm'rs*, 744 F.2d 28, 30 (6th Cir. 1984));
*see e.g.*, 🚩 *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10-11
(1987) (federal plaintiff seeking to enjoin state plaintiff from
enforcing a judgment against him); 🚩 *Moore v. Sims*, 442
U.S. 415, 423 (1979) (federal plaintiffs seeking to enjoin state
proceedings against them for child abuse).

**\*4** To determine whether abstention is appropriate under
*Younger*, district courts must conduct a three-pronged inquiry:
"[a]bstention is mandatory where: (1) 'there is an ongoing
state proceeding; (2) an important state interest is implicated;
and (3) the plaintiff has an avenue open for review of
constitutional claims in the state court.' " *Glatzer v. Barone*,
394 Fed. Appx. 763, 764 (2d Cir. 2010) (quoting *Liberty
Mutual Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir.
2009)). The Supreme Court, however, has stressed that
"[c]ircumstances fitting within the *Younger* doctrine ...
are 'exceptional' " and include only " 'state criminal
prosecutions,' 'civil enforcement proceedings,' and 'civil
proceedings involving certain orders that are uniquely in
furtherance of the state courts' ability to perform their judicial
functions.' " 🚩 *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S.
69, 73 (2013) (quoting 🚩 *New Orleans Public Service, Inc.
v. Council of City of New Orleans*, 491 U.S. 350, 367-68
(1989)).

Furthermore, Second Circuit has recently emphasized that
"[c]ivil contempt orders and orders requiring the posting of
bonds on appeal fall into" *Younger*'s third category, *i.e.*, "civil
proceedings involving certain orders uniquely in furtherance
of the state courts' ability to perform their judicial functions."

🚩 *Disability Rights New York v. New York*, 916 F.3d 129,

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 26 of 73

133 (2d Cir. 2019) (citing *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)). Indeed, the Supreme Court has found that "[t]he contempt power lies at the core of the administration of a State's judicial system," and "stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory[,]" and, accordingly, that *Younger* requires abstention where federal adjudication would interfere with such authority. *Juidice v. Vail*, 430 U.S. 327, 335, 336 n.12 (1977)); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (finding that *Younger* abstention is appropriate when pending state court proceedings involve enforcing orders and judgments, as federal courts must exercise proper "respect for the ability of state courts to resolve federal questions presented in state-court litigation;" *Dudla v. P.M. Veglio LLC*, No. 1:13-CV-0333, 2016 WL 1068120,*7 (N.D.N.Y. Mar. 15, 2016) (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)) (noting that "the 'presence of such other vital concerns as enforcement of contempt proceedings' " may justify abstention under *Younger)*.

Similarly, "the 'vindication of important state policies such as safeguarding the fiscal integrity of [public assistance] programs' " may also put a state court proceeding into Younger's third category. *Dudla v. P.M. Veglio LLC*, No. 1:13-CV-0333, 2016 WL 1068120,*7 (N.D.N.Y. Mar. 15, 2016) (quoting *Moore v. Sims*, 442 U.S. 415, 423 (1979)). Furthermore, "[i]n the context of applying the *Younger* abstention doctrine, courts have found that 'the State has an important interest in regulating zoning and land use.' " *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 558 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013)) (other citation omitted).

### 1. First Prong

Under *Younger*'s first prong, "[n]ot only must state proceedings be pending[,] ... the proceedings must have been initiated 'before any proceedings of substance on the merits have taken place in the federal court.' " *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 2009) (quoting *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 238 (1984)). Additionally, "a party ... must exhaust his state appellate remedies before seeking relief in the District Court[.]" *Glatzer v. Barone*, 394 Fed. Appx. 763, 765 (2d Cir. 2010) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 610 (1975)).

**\*5** In the present matter, Plaintiffs appealed Judge Lambert's October 22, 2019, decision on November 18, 2019, and their case before the Otsego County Supreme Court remains pending. As "[a] state action is considered 'pending' for *Younger* purposes through the completion of the state appeals process," to the extent that the proceedings in the present matter remain pending before the state supreme court, they easily qualify as "ongoing" under *Younger. See Choi v. Kim*, 96-cv-2086, 1997 WL 722708, *5 (E.D.N.Y. Sept. 25, 1997) *aff'd*, 166 F.3d 1201 (2d Cir. 1998) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 594 (1975)); *see also Glatzer v. Barone*, 394 Fed. Appx. 763, 765 (2d Cir. 2010) (finding that *Younger* abstention was warranted when the plaintiff's "state appellate proceedings were still pending").

Both parties' submissions indicate that their dispute continues before the state court. While the state court issued a decision on the order to show cause on March 12, 2020, granting the application and finding Plaintiffs in contempt, Plaintiff still has an appeal pending regarding the state court's earlier decision and the supreme court matter remains open. Thus, as Plaintiffs face pending proceedings before the state court, those proceedings would qualify as ongoing under *Younger* regardless of whether Plaintiffs decide to file an appeal of the March 12, 2020 decision. *See Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (holding that "to the extent there is a pending action against [p]laintiffs in the Village Court, *Younger*'s first requirement is satisfied").

### 2. Second Prong

*Younger*'s second prong, requiring that "an important state interest is implicated in that proceeding[,]" has also been met in the present matter. *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). "[D]etermining whether a state interest is 'important' turns not on the narrow outcome of the particular state court proceeding at hand, but rather on the importance of the generic proceedings to the state." *Homere v. Inc. Vill. of Hempstead*, 322 F. Supp. 3d 353, 367 (E.D.N.Y. 2018) (citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989); *Grieve*, 269 F.3d at 152).

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 27 of 73

"It has long been held that issues involving public welfare and safety fall squarely within a state's plenary police powers and therefore implicate important state interests." *Homere*, 322 F. Supp. 3d at 367 (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996)). "In the context of applying the *Younger* abstention doctrine, courts have found that 'the State has an important interest in regulating zoning and land use.' " *Jureli, LLC v. Schaefer*, 53 F. Supp. 3d 552, 558 (E.D.N.Y. 2014) (quoting *Thomas v. Venditto*, 925 F. Supp. 2d 352, 357 (E.D.N.Y. 2013)) (citation omitted); *see also Novie v. Vill. of Montebello*, No. 10-CV-9436 CS, 2012 WL 3542222, *12 (S.D.N.Y. Aug. 16, 2012) (collecting cases) (finding that a "state proceeding implicates an important state interest insofar as it concerns a town land use regulation akin to a zoning requirement"). "[A] local building code is a policy manifestation of that uniquely local interest in public health, wellness, safety, and comfort[;] ... any enforcement proceedings against [p]laintiffs initiated for violations of the [v]illage building code satisfy *Younger*'s second requirement." *Homere*, 322 F. Supp. 3d at 368.

The genesis of the present matter lies in Plaintiffs' alleged failure to comply with the City of Oneonta's housing and building codes, as well as the New York State Multiple Dwelling Law. *See* Dkt. No. 16-1 at 10. In its October 22, 2019, decision and order, the Supreme Court found that Plaintiffs' "proof failed to sufficiently rebut the evidence" of "significant outstanding violations" of those codes. In fact, that court specifically found that "[t]hese violations were serious and involve the health and safety of the public." Thus, "[i]t is clear the state interests implicated in the State action, to wit, the ability of the Town and the State to regulate zoning and land use, as well as the interest in protecting the health of its citizens and the environment, are important enough to warrant abstention." *Donangelo, Inc. v. Town of Northumberland*, No. 03 CV 934, 2005 WL 681494, *2 (N.D.N.Y. Mar. 24, 2005) (collecting cases).

**\*6** Lastly, the state court action, in addition to enforcing the important state interests discussed above, "seeks to sanction the Plaintiff for an allegedly wrongful act of violating a court order" and thus "involves an order uniquely in furtherance of the state court's ability to perform its judicial functions." *Jureli*, 53 F. Supp. 3d at 560. Accordingly, the state court's order to show cause "clearly constitutes a civil enforcement proceeding" that falls under *Younger*'s second category. *Id.*; *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (finding that enforcing a state court's contempt process "is surely an

important interest" under *Younger* because that process is how the state "vindicates the regular operation of its judicial system"); *Dosiak v. Town of Brookhaven*, No. CV 16-6658, 2017 WL 7048912, *7 (E.D.N.Y. Nov. 27, 2017) ("Plaintiffs' claim [challenging a state court's order to show cause] here clearly implicate both civil enforcement proceedings and New York State's interest in enforcing the orders and judgments of its courts....*Younger* abstention is therefore appropriate").

Accordingly, the Court finds that *Younger*'s second prong has been satisfied.

### 3. Third Prong

*Younger*'s third and final prong requires that "the state proceeding afford[ ] the federal plaintiff an adequate opportunity for judicial review of the federal constitutional claims." *Diamond "D" Const. Corp.*, 282 F.3d at 198 (citing *Grieve v. Tamerin*, 269 F.3d 149, 152 (2d Cir. 2001)). In the present matter, nothing in the record suggests that the state supreme court or appellate division is unable to adequately adjudicate Plaintiffs' federal constitutional claims. *See Homere*, 322 F. Supp. 3d at 368. In fact, Plaintiffs asserted their federal claims during the state court proceeding. Specifically, in their answer in the state court proceeding, Plaintiffs brought counter claims alleging violations of their due process rights under the Fifth and Fourteenth Amendments.

Accordingly, the Court finds that the third prong under *Younger* has been satisfied. *See Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14 (1987) (finding that "respect for the ability of state courts to resolve federal questions presented in state-court litigation" mandates *Younger* abstention where pending State proceedings involve enforcing orders and judgments); *Spargo*, 351 F.3d at 77 ("[I]n conducting the Younger inquiry, considerations of comity 'preclude[ ] any presumption that the state courts will not safeguard federal constitutional rights' ") (quoting *Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)).

### 4. Bad Faith Exceptions

Even when a case has met all three of *Younger*'s prongs, "federal relief is obtainable[,] ... where the there is a showing of bad faith or harassment in bringing the or conducting the state proceeding." *Wandyful Stadium, Inc. v. Town of*

*Hempstead*, 959 F. Supp. 585, 591 (E.D.N.Y. 1997) (citing *Younger*, 401 U.S. at 50). "[F]or such a showing to be made, generally 'the party bringing the state action must have no reasonable expectation of obtaining a favorable outcome.' " *Homere*, 322 F. Supp. 3d at 368 (quoting *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)) (citation omitted); *see also* *Kugler*, 421 U.S. at 126 n. 6 (noting that bad faith under *Younger* "generally means a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Furthermore, "[a] pattern of harassment both before and after institution of the state prosecution would be probative of the animus that attended the decision to prosecute." *Colonial First Properties, LLC v. Henrico Cty. Virginia*, 166 F. Supp. 2d 1070, 1087 n.12 (E.D. Va. 2001).

In the present matter, Plaintiffs have failed to show that Defendants brought the state proceedings in bad faith, *i.e.*, with "no reasonable expectation of obtaining a favorable outcome." *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir. 1994)). Plaintiffs assert that Defendants acted in bad faith prior to and throughout the state court proceedings. *See* Dkt. No. 1 at 3 (stating that Defendants "never recognized [Plaintiffs'] arduous work" to improve the Property and used "false statements, weaponized the code enforcement office and us[ed] false pretenses" to evict their tenants). However, no facts in the record suggest that Defendants had "no reasonable expectation of obtaining a favorable outcome" in the state proceedings. *Cullen*, 18 F.3d at 103. Nor does the record contain sufficient evidence to find that Defendants harassed Plaintiffs in bringing the proceedings. *See* *Colonial First Properties*, 166 F. Supp. 2d at 1089 (finding that the plaintiffs failed to establish harassment in a police investigation showing no signs of "malice, use of illegal arrest methods, high numbers of repeated arrests and raids[,] or evidence of a concerted effort to put [the plaintiffs] out of business").

**\*7** Plaintiffs appear to deny all code violations brought by Defendants. *See* Dkt. No. 18 at 4 (stating that a January, 2019, inspection had found a "[s]mall number of violations — cosmetic ones, no hazardous [ones] were found, and corrections were done with pictures sent to my lawyers ... [who] checked everything"). Plaintiffs further allege that Defendants offered misleading photographs to establish the code violations in the state court. *See id.* ("the code enforcement officer ... [was] looking only in storage areas, places that are not for living, taking pictures to use against

us"). Lastly, Plaintiffs also attack the state court judgment for being "jurisdictionally defective — thus ... not just void-able [sic], but Void, as in [ ]never existed, as in [ ]zero" and for being "a pure punishment order ... meant from the beginning as a punishment order." However, these "allegations [of bad faith and harassment] are too conclusory and barebones to serve as the factual predicate for a plausible finding of bad faith." *DeMartino*, 167 F. Supp. 3d at 355-56. Furthermore, Plaintiffs brought a number of the same claims during the state court proceedings, which the state court rejected.

Accordingly, the Court finds that Plaintiffs have failed to demonstrate that the bad faith exception to *Younger* abstention should apply. Therefore, the Court "must abstain from exercising subject matter jurisdiction over" these claims. *See* *Wilson v. Emond*, 373 Fed. Appx. 98, 100 (2d Cir. 2010).

## C. Rule 12(b)(6)

Even assuming that this action was not barred by *Younger*, the complaint is nevertheless subject to dismissal.

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," see Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see* *id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief." ' " *Id.* (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.* at 570. However, a complaint filed by *a pro se* litigant should not be dismissed without granting leave to amend at least once when "a liberal reading of the complaint gives any indication that a valid claim might be

stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991) (citation omitted).

Additionally, "in *a pro se* case, the court must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.' " *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)) (citations omitted). The Second Circuit has directed that the court is obligated to "make reasonable allowances to protect *pro se* litigants" from inadvertently forfeiting legal rights merely because they lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

In the present matter, even affording Plaintiffs the special solicitude due to *pro se* litigants, the complaint fails to plausibly state any cause of action. In the "complaint," Plaintiffs complain that they are being charges fees by the City of Oneonta that they believe they have already paid and that David Merzig and Margie Merzig "continue to destroy [their] business by removing tenants." Dkt. No. 1 at 2. Further, they claim that federal agencies were instructed "by David Merzig to stop payment and remove tenants from [their] property." *Id.* Plaintiffs then mention the fact that they still have a case pending in Otsego County Supreme Court and that the lawyers that they had previously retained in the state court litigation have since withdrawn. *See id.* Nothing in the complaint even hints at what federal causes of action Plaintiffs are attempting to assert.

**\*8** Attached to the complaint are various exhibits that are likewise unhelpful. For example, the first exhibit is a letter Plaintiff Melania Pervu sent to the Attorney General of the United States asking for assistance with the issues underlying the state court litigation. *See* Dkt. No. 1 at 3. Also attached is a scheduling order from the Otsego County Supreme Court and the various March 8, 2018 eviction notices sent by the City of Oneonta Department of Law to both tenants and social services agencies. *See id.* at 4-9.

As Defendants correctly contend, Plaintiffs have failed to plead any plausible cause of action. Accordingly, the Court grants Defendants' motion to dismiss on this alternative ground.

### D. Leave to Amend

"While *pro se* plaintiffs are generally given leave to amend a deficient complaint, a district court may deny leave to amend when amendment would be futile." *Hassan v. U.S. Dep't of Veteran Affairs*, 137 Fed. Appx. 418, 420 (2d Cir. 2005) (citing *Dluhos v. Floating & Abandoned Vessel, Known as "New York"*, 162 F.3d 63, 69–70 (2d Cir. 1998)). "Amendment of a complaint is futile where the proposed amended complaint would be unable to withstand a subsequent motion to dismiss." *Tatum v. Oberg*, No. 08 Civ. 1251, 2009 WL 5066812, \*2 (D. Conn. Dec. 18, 2009) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

In the present matter, there is no question that granting Plaintiffs leave to amend would be an exercise in futility. Any amended complaint, even if it were to plausibly allege claims under 42 U.S.C. § 1983, it would nevertheless be subject to dismissal under *Younger*. Accordingly, Plaintiffs' complaint is dismissed with prejudice.

### IV. CONCLUSION

After carefully the parties' submissions and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' complaint is **DISMISSED with prejudice**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve the parties with a copy of this Memorandum-Decision and Order in accordance with the Local Rules.

### IT IS SO ORDERED.

### All Citations

Not Reported in Fed. Supp., 2020 WL 1643392

Pervu v. City of Oneonta, Not Reported in Fed. Supp. (2020)

Case 6:23-cv-01160-GTS-ML    Document 4    Filed 12/21/23    Page 30 of 73

**Footnotes**

1    Information contained in the "Background" section of this Memorandum-Decision and Order that is not otherwise taken from Plaintiffs' complaint, is taken from the publicly available information from the ongoing litigation between the parties in Otsego County Supreme Court. *See* Index No. EF2018-503.

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 31 of 73

2018 WL 6727538
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Deshawn TYSON, Plaintiff,

v.

Patrick J. CLIFFORD, et al., Defendants.

CIVIL CASE NO. 3:18cv1600(JCH)
|
Signed 12/21/2018

**Attorneys and Law Firms**

Deshawn Tyson, Suffield, CT, pro se.

**INITIAL REVIEW ORDER**

Janet C. Hall, United States District Judge

*1  The plaintiff, Deshawn Tyson ("Tyson"), is confined at MacDougall-Walker Correctional Institution. He has filed a pro se civil rights action pursuant to section 1983 of title 42 of the United States Code against New Haven Superior Court Judge Patrick J. Clifford ("Judge Clifford") and Connecticut State's Attorney John P. Doyle, Jr. ("Attorney Doyle"). For the reasons set forth below, the Complaint is dismissed.

**I. STANDARD OF REVIEW**

Pursuant to section 1915A(b) of title 28 of the United States Code, the court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." Id. This standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether the prisoner has paid [a] filing fee." Shakur v. Selsky, 391 F.3d 106, 112 (2d Cir. 2004) (internal quotation marks and citation omitted).

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only " 'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,' " does not meet the facial plausibility standard. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007) ). Although courts still have an obligation to interpret "a pro se complaint liberally," the Complaint must still include sufficient factual allegations to meet the standard of facial plausibility. See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

**II. FACTS**

Tyson states that he has been "wrong[ly] incarcerated" in a facility within the State of Connecticut Department of Correction since March 10, 2016. [1]  See Compl. (Doc. No. 1) at 22. The State of Connecticut Judicial Branch website reflects that New Haven police officers arrested Tyson on March 10, 2016, and that the State of Connecticut has charged him in a criminal case filed in the Connecticut Superior Court for the Judicial District of New Haven with one count of sexual assault in the first degree, in violation of Conn. Gen. Stat. § 53a-70(a)(1), and one count of unlawful restraint in the first degree, in violation of Conn. Gen. Stat. § 53a-95. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Mar. 10, 2016). [2]  The case detail indicates that Tyson is represented by counsel and that a jury trial is scheduled for December 16, 2020. See id.

*2  Tyson alleges that, on or about July 26, 2018, in the Connecticut Superior Court for the Judicial District of New Haven, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard any motions, memoranda, or affidavits filed by Tyson. See Compl. at 5 ¶ 1, 22. Judge Clifford has ruled against Tyson even when Attorney Doyle refused to oppose Tyson's motions. See id. at 17.

On or about August 22, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to remain silent during a pretrial hearing and that Attorney Doyle agreed to do so. See id. at 5 ¶ 2. On or about September

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01160-GTS-ML    Document 4    Filed 12/21/23    Page 32 of 73

12, 2018, Judge Clifford stated on the record that he had instructed Attorney Doyle to ignore or disregard Tyson's "Conditional Acceptance/Negotiable instrument/grievance" document. See id. at 5 ¶ 3. On that same date, Judge Clifford informed Tyson that he would not consider any motions that Tyson might file. See id. at 5 ¶ 4. Tyson generally asserts that Judge Clifford and Attorney Doyle have misapplied statutes and laws and have failed to provide him with "Discovery/Brady material." Id. at 6 ¶ 6, 17–18.

At one point during the criminal proceeding, Judge Clifford issued an order that Tyson could represent himself. See id. at 22. Judge Clifford subsequently attempted to appoint an attorney to represent Tyson even though the attorney had made threats against Tyson in the past. See id.

### III. DISCUSSION

Tyson alleges that the defendants violated his rights under the First, Fifth, Eighth, Ninth and Fourteenth Amendments as well as under 🚩 sections 241 and 🚩 242 of title 18 of the United States Code. See id. at 17–18. Tyson seeks punitive, compensatory, nominal, and exemplary damages, as well as injunctive and declaratory relief. See id. at 6–7.

As a preliminary matter, the court notes that Tyson includes the following additional allegations in the Complaint. The "State of CT has declared me/plaintiff sovereign [f]rom itself, as establish[ed] by law, because I/plaintiff had/has no residency with the state and therefore plaintiff is not only a private man as opposed to a corporate fiction." See id. at 6 ¶ 7. Tyson asserts that he cannot be "named in any statutes" and has "a Reservation of Rights which was made known to all defendants." See id. at 6 ¶¶ 8–10. Tyson contends that, throughout his criminal case, "defendants [have] refuse[d] to adhere to the Supremacy Clause of the United States Supreme Court rulings." See id. at 6 ¶ 5. Tyson signs the Complaint as: "Secured Party, Sui Juris, one of the sovereign people, a private man on the land, non-combatant, an American by birth, and child of the living God, Grantor, Secured Party/Creditor and principal of which 'Rights' existed long antecedent to the Organization of the State and Trustee." Id. at 33. Attached to the Complaint is a document titled "Memorandum of Law with points and Authorities on 'sovereignty' of the people In Relationship to 'Government' of the several Compact De-facto State and the Federal Government." Id. at 25–32.

This language and the title of the attachment to the Complaint suggest that Tyson considers himself a "sovereign citizen." In United States v. Ulloa, 511 F. App'x. 105 (2d Cir. 2013), the Second Circuit described, "sovereign citizens," as "a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior." Id. at 107 n.1.

**\*3** Adherents of such claims or defenses "believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." 🚩 Gravatt v. United States, 100 Fed. Cl. 279, 282 (2011) (citations omitted). Federal courts across the country, however, have routinely refused to credit arguments based on a redemption, sovereign citizen, or other similar theory because the arguments are often frivolous, irrational and unintelligible. See 🚩 United States v. Sterling, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts have summarily rejected sovereign citizens' legal theories as frivolous); 🚩 United States v. Benabe, 654 F.3d 753, 767 (7th Cir. 2011) ("Regardless of an individual's claimed status of descent, be it as a sovereign citizen, a secured-party creditor, or a flesh-and-blood human being, that person is not beyond the jurisdiction of the courts. These theories should be rejected summarily, however they are presented.") (internal quotation marks omitted); Charlotte v. Hanson, 433 F. App'x. 660, 661 (10th Cir. 2011) (rejecting the sovereign citizen theory as having no conceivable validity in American law) (citation omitted); 🚩 United States v. Jagim, 978 F.2d 1032, 1036 (8th Cir. 1992) (holding that "sovereign citizen" argument was "completely without merit" and "patently frivolous"); Akbar v. Clarke, No. 1:15-CV-338(AJT/TCB), 2016 WL 4150456, at \*7 (E.D. Va. Aug. 1, 2016) (noting that sovereign citizen claims are "wholly frivolous"); Berman v. Stephens, No. 4:14-CV-860-A, 2015 WL 3622694, at \*2 (N.D. Tex. June 10, 2015) (finding that a prisoner's "reliance on the UCC or a so-called 'sovereign citizen' theory that he is exempt from prosecution and beyond the jurisdiction of the state or federal courts is frivolous") (collecting cases); Gaskins v. South Carolina, C/A No. 2:15-cv-2589 DCN, 2015 WL 6464440, at \*4 (D.S.C. Oct. 26, 2015) (affirming recommended ruling dismissing as baseless prisoner's claim, premised upon "sovereign citizen" theory, that the state court lacked jurisdiction over her and that her state conviction was therefore void); Paul v. New York, No. 13-CV-5047 (SJF)(AKT), 2013 WL 5973138, at \*3 (E.D.N.Y. Nov. 5, 2013) (dismissing complaint as factually and legally frivolous

Tyson v. Clifford, Not Reported in Fed. Supp. (2018)

Case 6:23-cv-01160-GTS-ML    Document 4    Filed 12/21/23    Page 33 of 73

because "[t]he conspiracy and legal revisionist theories of sovereign citizens are not established law in this court or anywhere in this country's valid legal system") (internal quotation marks and citation omitted).

It is apparent that Tyson is claiming that, as a "sovereign citizen," he is not subject to the jurisdiction of the State of Connecticut or the Connecticut Superior Court and that any criminal charges against him must be dismissed. To the extent that he challenges the jurisdiction of the State of Connecticut, its courts, or Judge Clifford, or the authority of the State, through Attorney Doyle, to prosecute him for a criminal offense, based on a "sovereign citizen" theory, the court concludes that the claim lacks an arguable legal basis. Thus, that claim is dismissed. See 28 U.S.C. § 1915A(b)(1). To the extent that Tyson is challenging the conduct of the defendants on other grounds, the court addresses those claims below.

A. Requests for Injunctive and Declaratory Relief

Tyson seeks a declaration that the defendants violated his constitutional and federal protected rights and an injunction directing the defendants to cease and desist from making further contact with him or harassing him in violation of his rights. See Compl. at 7. He includes, an "Order to Show Cause for an Preliminary Injunction and a Temporary Restraining Order," as an attachment to the Complaint, which seeks a court order that the defendants be enjoined from various types of conduct in connection with his state criminal case. See id. at 19–20.

In Younger v. Harris, 401 U.S. 37 (1971), the Supreme Court held that a federal court, except in cases where an injunction is necessary to prevent immediate and irreparable injury to a defendant, should not enjoin a pending state court criminal proceeding. Id. at 45. The doctrine of federal abstention, as outlined in Younger, "is grounded in principles of comity and federalism and is premised on the belief that a state proceeding provides a sufficient forum for federal constitutional claims." Schlagler v. Phillips, 166 F.3d 439, 442 (2d Cir. 1999). It "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." Spargo v. New York State Comm'n on Judicial Conduct, 351 F.3d 65, 74 (2d Cir 2003) (citations omitted).

In Sprint Commc'ns, Inc. v. Jacobs, 571 U.S. 69 (2013), the Supreme Court clarified that courts should abstain under Younger only in three "exceptional circumstances": (1) pending state criminal proceedings; (2) civil enforcement proceedings that are "akin to criminal prosecutions;" and (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." See id. at 72. The court may address the applicability of the Younger abstention doctrine sua sponte. See Catlin v. Ambach, 820 F.2d 588, 591 (2d Cir. 1987) (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976) ). The Younger doctrine is applicable to suits for declaratory relief as it is to those for injunctive relief. See Samuels v. Mackell, 401 U.S. 66, 73 (1971) (holding Younger's policy would "be frustrated as much by a declaratory judgment as it would be by an injunction").

**\*4** It is clear from the Complaint and the State of Connecticut Judicial Branch website, that Tyson's state criminal proceeding stemming from his arrest on March 10, 2016 is ongoing. See State v. Tyson, Case No. NNH-CR16-0165313-T (Conn. Super. Ct. Nov. 30, 2018). If the court were to grant Tyson's request for a court order directing the defendants to dismiss the criminal charges against Tyson, or were to declare that the defendants had violated Tyson's federal constitutional rights in presiding over and prosecuting Tyson's state criminal case, such Orders would interfere with Tyson's pending state criminal proceeding.

There are two exceptions to the Younger abstention doctrine: bad faith and extraordinary circumstances. See Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 197–198 (2d Cir. 2002). Abstention may be inappropriate if "a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct, or where a prosecution or proceeding is otherwise brought in bad faith or for the purpose to harass." Id. at 199 (internal quotation marks and citation omitted). This exception focuses on the subjective intent or motivation of the state prosecutor who initiates the proceeding. See id. ("A state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception.") (citation omitted).

The Second Circuit has described the extraordinary circumstances necessary to invoke the second exception to

abstention under Younger as circumstances that "render the state court incapable of fairly and fully adjudicating the federal issues before it" and "creat[e] an extraordinarily pressing need for immediate federal equitable relief." 🚩Id. at 201 (citation omitted). Application of the extraordinary circumstances exception requires "two predicates ... (1) that there be no state remedy available to meaningfully, timely, and adequately remedy the alleged constitutional violation; and (2) that a finding be made that the litigant will suffer 'great and immediate' harm if the federal court does not intervene." Id. (citation omitted) (emphasis in original).

Tyson has alleged no facts to suggest that the prosecutor initiated the criminal action against him in bad faith or with "no reasonable expectation of obtaining a favorable outcome." Id. at 199 (internal quotation marks and citation omitted). Nor has Tyson alleged the absence of a remedy available in state court to challenge any alleged constitutional violations associated with his criminal prosecution. Tyson is not precluded from challenging any subsequent conviction or sentence on appeal to the Connecticut Appellate and Supreme Courts, filing a habeas petition in the Connecticut Superior Court, and following that, a habeas petition in federal court. Furthermore, Tyson has not alleged that he will suffer imminent harm if this court does not intervene in the ongoing prosecution. See Davis v. Lansing, 851 F.2d 72, 77 (2d Cir. 1988) (holding the burden of defending criminal prosecution is insufficient, without more, to constitute irreparable harm); Saunders v. Flanagan, 62 F. Supp. 2d 629, 635 (D. Conn. 1999) ("That the plaintiff will be forced to defend against a charge of murder in state court does not constitute the extraordinary circumstances resulting in irreparable harm warranting this court to refuse to apply the doctrine of Younger abstention, and no other specific basis of 'extraordinary circumstances' is asserted.").

**\*5** Because there are no facts alleged to plausibly suggest that either of the narrow exceptions to the Younger abstention doctrine have been met, the court abstains from exercising jurisdiction over the requests for injunctive and declaratory relief seeking intervention in Tyson's ongoing state criminal case. The court therefore dismisses those requests. See 28 U.S.C. § 1915A(b)(1).

### B. Request for Money Damages

Tyson seeks $ 1,000,000 in punitive damages from each defendant as well as damages for harassment, mental anguish, anxiety and annoyance, nominal damages and exemplary

damages. See Compl. at 6. The court declines to stay this action pending resolution of the state criminal proceeding because Tyson's claims for damages lack arguable legal merit.

### 1. Judge Clifford

Judges are immune from suit, not just from the ultimate assessment of damages. See 🚩Mireles v. Waco, 502 U.S. 9, 11 (1991). This immunity applies even to claims that a judge acted in bad faith, erroneously, maliciously or "in excess of his authority." 🚩Id. at 13. "[O]nce a court determines that an official was functioning in a core judicial or prosecutorial capacity, absolute immunity applies however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." DiBlasio v. Novello, 344 F.3d 292, 297 (2d Cir. 2003) (citations and internal quotation marks omitted). There are two situations in which judicial immunity may be overcome. A judge is not immune from suit for actions taken outside his judicial capacity or for actions that are judicial in nature but taken in the absence of all jurisdiction. See 🚩Mireles, 502 U.S. at 11 (citations omitted).

Tyson alleges that, at times during the pendency of his state criminal case, Judge Clifford has instructed Attorney Doyle not to speak during a pretrial hearing, has either declined to rule on his motions or ruled against him on matters and motions, has disregarded his Acceptance/Negotiable Instrument/Grievance document, has misapplied statutes, and has refused to provide or disclose discovery/exculpatory material to him. See Compl. at 5, 17–18. Tyson complains that, at one point, Judge Clifford permitted him to proceed pro se, but would not rule on his motions. See id. at 22. Tyson suggests that more recently, Judge Clifford has attempted to appoint counsel for him, even though he did not ask for counsel. See id. Tyson claims that the attorney Judge Clifford attempted to appoint for him had threatened Tyson in the past. See id.

Appointing counsel for a party and determining whether to rule on motions, ruling on motions, including motions related to the disclosure of information or evidence, issuing orders regarding documents that have been filed in a case, directing speakers during proceedings, and interpreting and applying statutes constitute judicial acts within the jurisdiction of a state court judge. See Sadler v. Supreme Court of Connecticut,

167 F. App'x 257, 259 (2d Cir. 2006) ("Superior Court Judge White is immune from liability under 🚩 § 1983 for damages and injunctive relief. Judge White performed a judicial action within his jurisdiction when he determined that Sadler's counsel ... should not be replaced.") (citation omitted); Ashmore v. Prus, No. 13-CV-2796 (JG), 2013 WL 3149458, at *3 (E.D.N.Y. June 19, 2013) ("Making evidentiary rulings is a paradigmatic judicial function."); Book v. Tobin, No. 3:04CV442 (JBA), 2005 WL 1981803, at *2 (D. Conn. Aug. 16, 2005) ("Quintessential judicial acts include presiding over trial proceedings, making evidentiary rulings, issuing jury instructions, and deciding motions, and remain protected by judicial immunity even if the decisions are erroneous, untimely, and in excess of the judge's authority."). There are no allegations that Judge Clifford engaged in actions that were not judicial in nature or were taken in the absence of all jurisdiction. Thus, Judge Clifford is absolutely immune from suit to the extent that Tyson seeks money damages, and those claims against Judge Clifford are dismissed. See 28 U.S.C. § 1915A(b)(2).

### 2. Attorney Doyle

**\*6** Tyson alleges that Attorney Doyle is the State's Attorney prosecuting his criminal case in the Connecticut Superior Court for the Judicial District of New Haven. See Compl. at 3, 5. Tyson asserts that Attorney Doyle did not speak during a pretrial hearing, did not respond to motions that he filed in the case, ignored his Acceptance/Negotiable Instrument/Grievance document, misapplied statutes, and refused to disclose discovery/exculpatory material to him. See id. at 5 ¶ 2, 17–18. Tyson contends that, by failing to respond to his motions, Attorney Doyle has consented to the relief sought in those motions, including a motion to dismiss the charges against him. See id. at 20.

A prosecutor is protected by absolute immunity from a 🚩 section 1983 action "for virtually all acts, regardless of motivation, associated with his function as an advocate." 🚩 Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). In 🚩 Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that a state prosecutor was absolutely immune from a civil suit to recover damages under 🚩 section 1983 because the prosecutor's conduct "in initiating a prosecution and presenting the State's case" were "intimately associated with the judicial phase of the criminal process." 🚩 Id. at 430–

31. If a prosecutor acts in an investigative rather than an adversarial capacity, he or she is not entitled to absolute immunity. See 🚩 Kalina v. Fletcher, 522 U.S. 118, 125–27 (1997) (holding that prosecutor was not protected by absolute immunity because she was acting as an investigator when she signed a sworn affidavit attesting to the facts supporting an arrest warrant).

Tyson's allegations against Attorney Doyle pertain to his role in prosecuting the criminal case against Tyson. Decisions involving whether to respond to a motion, to argue a matter in a pretrial hearing, or to disclose evidence to a defendant are all part of the preparation of a case for trial. See Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) ("It is by now well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under 🚩 § 1983.' ") (quoting 🚩 Imbler, 424 U.S. at 410, 431); 🚩 Smith v. Garretto, 147 F.3d 91, 94 (2d Cir. 1998) ("A prosecutor enjoys absolute immunity for acts taken in initiating a prosecution and in presenting the State's case, whether at a trial, a preliminary hearing, or a bail hearing.")(internal citations and quotation marks omitted); 🚩 Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (explaining that prosecutors are "immune for conduct in preparing for those functions; for example, evaluating and organizing evidence for presentation at trial or to a grand jury, or determining which offenses are to be charged") (citation omitted). Thus, Attorney Doyle is immune from this suit.

### ORDERS

The court enters the following Orders:

**(1)** To the extent that Tyson challenges, based on a "sovereign citizen" theory, the jurisdiction of the State of Connecticut to prosecute him for a criminal offense, or the authority of any defendant to be involved in his prosecution, the court concludes that the claim lacks an arguable legal basis and is **DISMISSED**. See 28 U.S.C. § 1915A(b)(1). The claims against Judge Clifford and Attorney Doyle in their individual capacities for money damages are **DISMISSED** on the ground that they are entitled to absolute immunity. See 28 U.S.C. § 1915A(b)(2). The court concludes that it must abstain from exercising jurisdiction over the requests for injunctive and declaratory relief seeking the court's

**Tyson v. Clifford, Not Reported in Fed. Supp. (2018)**

Case 6:23-cv-01160-GTS-ML    Document 4    Filed 12/21/23    Page 36 of 73

intervention in Tyson's ongoing state criminal case and **DISMISSES** those requests. See 28 U.S.C. § 1915A(b)(1).

 **\*7 (2)** The Clerk is directed to enter judgment for the defendants and close this case. Any appeal from the Ruling dismissing the Complaint would not be taken in good faith.

See 🚩 28 U.S.C. § 1915(a)(3).

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 6727538

---

## Footnotes

1    The State of Connecticut Department of Correction's website indicates, however, that Tyson is currently serving a nine-year sentence, imposed on January 25, 2017, for a violation of probation. Information regarding Tyson's current confinement may be found on the State of Connecticut Department of Correction's website under Inmate Search using his CT DOC Inmate Number 253494. See http://portal.ct.gov/DOC.

2    Information regarding this case may be found on the State of Connecticut's Judicial Branch website at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Pending Case – Search by Defendant – using plaintiff's last name and first initial of his first name - Tyson, D. (Last visited on December 19, 2018). The court notes that Tyson has filed another federal lawsuit against the victim of the alleged offenses for which he was arrested on March 10, 2016, as well as the police officers who arrested him. See Tyson v. Doe, et al., Case No. 3:17cv731(JCH). The court has stayed that action pending resolution of Tyson's state criminal case. See id. (Ruling on Mot. to Intervene or Stay Discovery, Doc. No. 133).

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.                                   6

2012 WL 1965631
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Timothy ROBINSON, Petitioner,
v.
Michael SPOSATO, Sheriff of
Nassau County, Respondent.

No. CV–11–0191 (SJF).
|
May 29, 2012.

**Attorneys and Law Firms**

Timothy Robinson, East Meadow, NY, pro se.

Paul M. Tarr, Office Of The Attorney General, New York, NY, Jason Richards, Mineola, NY, for Respondent.

**OPINION & ORDER**

FEUERSTEIN, District Judge.

**\*1** On January 7, 2011, petitioner Timothy Robinson ("Petitioner") filed a petition in this Court seeking a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254 challenging his pretrial detention at the Nassau County Correctional Center ("NCCC") following his arrest on September 30, 2010 on larceny charges. The Nassau County District Attorney's Office ("Respondent"), on behalf of Michael Sposato, Sheriff of Nassau County, now moves to dismiss the petition. Petitioner has not opposed the motion. For the reasons set forth herein, respondent's motion is granted and the proceeding is dismissed.

**I. BACKGROUND**
In his petition, petitioner alleges that on August 31, 2010, he was arrested when he reported to his parole officer [1] "for a 155.3(1) that aparently [sic] happend [sic] on the 28th day of May 2010." [2] (Pet. at 1). According to petitioner, he was arraigned the following morning. (*Id.*) Petitioner further alleges that on September 9, 2010, he was released on his own recognizance pursuant to New York Criminal Procedure Law

Section 180 .80 "because no witnesses showed up, and the [prosecutor] had no solid sufficient evidence." (Pet. at 1–2).

Plaintiff alleges that on September 30, 2010, he was rearrested by his parole officer based upon the August 31, 2010 arrest. According to plaintiff, following that arrest, he was held in custody for over ninety (90) days in violation of New York Penal Law Section 190.80 and his due process rights under the Fourteenth Amendment to the United States Constitution. [3] (Pet. at 2).

On January 7, 2011, petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 and 2254, alleging, *inter alia,* that his pretrial detention in excess of ninety (90) days violated his Fourteenth Amendment due process rights. Respondent now moves to dismiss the petition on the basis that petitioner has failed to exhaust available remedies in state court and that this Court must abstain from interfering in pending state court criminal proceedings. Petitioner has not opposed, or otherwise responded to, respondent's motion.

**II. DISCUSSION**

**A. Exhaustion**

Although petitioner seeks relief under both Sections 2241 and 2254 of Title 28 of the United States Code, relief is only available to him under Section 2241. Section 2254(a), provides, in relevant part, that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody *pursuant to the judgment of a State court* only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." (Emphasis added). Since petitioner, a pretrial detainee at the time he commenced this proceeding, was not "in custody pursuant to the judgment of a State court" at the time he filed his petition, he cannot seek habeas corpus relief under Section 2254. *See, e.g. Crawford v.* New York, No. 08–CV–1287, 2009 WL 396308, at \* 1 (N.D.N.Y. Jan. 17, 2009) ("[S]ection 2254 would not apply to individuals held in pretrial custody because their custody would not result from a 'judgment' as required by that statute \* \* \*.")

**\*2** Section 2241(c)(3) allows any prisoner to seek a writ of habeas corpus if "[h]e is in custody in violation of the Constitution or laws or treaties of the United States."

Thus, "section 2241 applies to all individuals held in state custody while § 2254 applies only to those whose custody results from a final judgment." *Crawford,* 2009 WL 396308, at \* 1. Accordingly, Section 2241 is available to state pre-trial detainees challenging their custody as being in violation of the Constitution or federal law. *See, e.g. Marte v. Berkman,* No. 11 Civ. 6082, 2011 WL 4946708, at \* 5 (S.D.N.Y. Oct.18, 2011), *aff'd on other grounds sub nom Marte v. Vance,* No. 11–4486–cv, 2012 WL 1632606 (2d Cir. May 10, 2012); *Yellowbear v. Wyoming Attorney General,* 525 F.3d 921, 924 (10th Cir.2008) ("Section 2241 is a vehicle for challenging pretrial detention \* \* \*.")

Although not a statutory requirement, Section 2241 has been interpreted as requiring a petitioner to exhaust available state court or administrative remedies prior to seeking any relief thereunder in federal court. *See Carmona v. United States Bureau of Prisons,* 243 F.3d 629, 632–34 (2d Cir.2001); *see also United States ex rel. Scranton v. State of New York,* 532 F.2d 292, 294 (2d Cir.1976) ("While 28 U.S.C., Section 2241 does not by its own terms require the exhaustion of state remedies as a prerequisite to the grant of federal habeas relief, decisional law has superimposed such a requirement in order to accommodate principles of federalism."); *Allen v. Maribal,* No. 11–CV–2638, 2011 WL 3162675, at \* 1 (E.D.N.Y. July 25, 2011) (accord). A petitioner who has not exhausted available state court or administrative remedies may only seek a writ of habeas corpus under Section 2241 if: (1) he establishes cause for his failure to exhaust and prejudice as a result of the alleged violation of federal law, *see id.,* or (2) he demonstrates that the failure to consider his claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). With respect to state prisoners seeking federal habeas corpus relief, the exhaustion requirement and "cause and prejudice" standard balance the interest "in guarding against convictions that violate fundamental fairness" against the "equally weighty principles of federalism, comity, and finality." *Carmona,* 243 F.3d at 633 (quotations and citation omitted).

Since petitioner has not alleged that he sought any relief from his pretrial detention in state court prior to commencing this proceeding, he has not exhausted available state court

remedies. *See, e.g. Allen,* 2011 WL 3162675, at \* 2 ("Because the state proceedings are pending before the trial court, petitioner's claims have yet to be presented to the highest state court, and petitioner therefore has not exhausted his available state remedies."); *cf. Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 490, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) (finding that the petitioner had exhausted available state remedies with respect to his speedy trial defense, notwithstanding the fact that he had not yet gone to trial in the state court criminal proceeding, since he had made repeated demands for trial to the state courts, thereby "offering those courts an opportunity to consider on the merits his constitutional claim of the \* \* \* denial of a speedy trial.") Nor has petitioner asserted any cause for his failure to exhaust his state court remedies, any prejudice resulting to him from the alleged violation of his due process rights or that this Court's failure to consider his claims will result in a fundamental miscarriage of justice, particularly in light of his subsequent conviction upon his plea of guilty to the charge of petit larceny. Accordingly, the petition is denied and the proceeding is dismissed in its entirety for petitioner's failure to exhaust available state court remedies.

### B. Abstention

**\*3** Even if petitioner could show cause for his failure to exhaust and prejudice resulting to him from the alleged violation of federal law, the petition is denied pursuant to *Younger v. Harris,* 401 U.S. 37, 54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and its progeny.

Pursuant to the Supreme Court's decision in *Younger,* absent unusual circumstances, a federal court must abstain from intervening in ongoing state criminal proceedings when adequate state relief is available. 401 U.S. at 54, 91 S.Ct. 746, 27 L.Ed.2d 669; *see also Davis v. Lansing,* 851 F.2d 72, 76 (2d Cir.1988) ("[I]nterference in pending [state court criminal] proceedings is inappropriate unless state law clearly bars the interposition of ... federal constitutional claims." (quotations, alterations and citations omitted)); *York v. Ward,* 538 F.Supp. 315, 317 (E.D.N.Y.1982) ("[F]ederal court interference with state court proceedings has long been discouraged by public policy that is reflected quite plainly in \* \* \* judicial pronouncements.") "No more is required to invoke *Younger* abstention than the *opportunity* to present federal claims in the state proceeding." *Davis,* 851 F.2d at 76 (emphasis in original) (quoting *Juidice v. Vail,* 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376 (1977)).

"*Younger* ⚑ abstention is appropriate when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Hansel v. Town Court for Town of Springfield, N.Y.,* 56 F.3d 391, 393 (2d Cir.1995). "So long as a plaintiff is not barred on procedural or technical grounds from raising alleged constitutional infirmities [in state court], it cannot be said that state court review of constitutional claims is inadequate for *Younger* ⚑ purposes." *Id.* at 394. As with the exhaustion principle, the interests of federalism and comity also stand behind the *Younger* abstention policy. *See Davis,* 851 F.2d at 76.

"Although [*Younger* ] dealt with a federal injunction of a pending state criminal prosecution and was based upon a proper respect for state functions, that is, comity, the same policy and legal considerations have been applied to federal habeas corpus relief from a state criminal trial." *York,* 538 F.Supp. at 317 (citing, *inter alia, U.S. ex rel. Scranton,* 532 F.2d 292). ⚑ Section 2241 "cannot be used to 'permit the derailment of a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court.' " *Allen,* 2011 WL 3162675, at * 1 (quoting ⚑ *Braden,* 410 U.S. at 493, 93 S.Ct. 1123, 35 L.Ed.2d 443). Accordingly, courts should refrain from derailing "a pending state proceeding by an attempt to litigate constitutional defenses prematurely in federal court." *Allen,* 2011 WL 3162675, at * 1.

At the time he commenced this proceeding, the criminal proceeding against petitioner was still pending in state court and there is ample opportunity for review of petitioner's constitutional claim in state court, i.e., by way of direct appeal from, or other collateral attack of, his judgment of conviction in state court. Moreover, "[t]here is no question that the ongoing prosecution [of petitioner] implicates important state interests: *Younger* itself settled the importance of the state's interest in criminal proceedings." *Davis,* 851 F.2d at 76; *see also* ⚑ *Hansel,* 56 F.3d at 393 ("[I]t is axiomatic that a state's interest in the administration of criminal justice within its borders is an important one.") Since petitioner has not demonstrated any "extraordinary" or "unusual" circumstances that would militate against *Younger* abstention, *see Davis,* 851 F.2d at 76, respondent's motion is granted, the petition is denied and the proceeding is dismissed in its entirety without prejudice.

## III. CONCLUSION

**\*4** Respondent's motion to dismiss is granted, the petition is denied and the proceeding is dismissed in its entirety without prejudice. Since petitioner has failed to make a substantial showing of a denial of a constitutional right, *see, e.g. Finkelstein v. Spitzer,* 455 F.3d 131, 133 (2d Cir.2006) (denying a certificate of appealability because petitioner was no longer in custody in connection with his challenged convictions at the time he filed his habeas corpus petition), a certificate of appealability will not issue. 28 U.S.C. § 2253; *see also* ⚑ *Miller–El v. Cockrell* 537 U.S. 322, 336, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); ⚑ *Luciadore v. New York State Div. of Parole,* 209 F.3d 107, 112 (2d Cir.2000); ⚑ *Kellogg v. Strack,* 269 F.3d 100, 102 (2d Cir.2001). Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See,* 28 U.S.C. § 2253. The Clerk of the Court is directed to close this case.

SO ORDERED.

## All Citations

Not Reported in F.Supp.2d, 2012 WL 1965631

## Footnotes

1    According to respondent, petitioner was on parole for convictions of attempted burglary in the second degree in violation of New York Penal Law Sections 110.00 and ⚑ 140.25 and attempted criminal possession of a forged instrument in violation of New York Penal Law Sections 110.00 and 170.25.

2    There is no Section 155.3 of the New York Penal Law. However, a Superior Court Information charged petitioner with one (1) count of grand larceny in the fourth degree in violation of ⚑New York Penal Law § 155.30(1), a class E felony, and one (1) count of petit larceny in violation of New York Penal Law § 155.25, a class A misdemeanor. On March 22, 2011, the prosecutor dismissed the charge of grand larceny in the fourth degree and petitioner pled guilty in the Supreme Court of the State of New York, County of Nassau to one (1) count of petit larceny in violation of New York Penal Law § 155.25, punishable by a maximum sentence of imprisonment of one (1) year. During his plea allocution: (1) petitioner testified that on May 28, 2010, he purchased items at a store in Glen Head, New York using a Visa card belonging to an account that he knew had been closed, (P. at 15); (2) petitioner waived his right to appeal his conviction, (P. at 11); and (3) the trial court agreed to sentence petitioner to a term of imprisonment of eleven (11) months in the NCCC, to run concurrently with the sentence imposed upon petitioner for his conviction of a violation of probation, (P. at 13).

3    According to respondent, petitioner was ultimately sentenced, upon his plea of guilty to the charge of petit larceny in violation of New York Penal Law § 155.25, on June 2, 2011. Respondent further contends that petitioner has completed the term of imprisonment imposed pursuant to the June 2, 2011 sentence, although he remains in custody pursuant to the sentence imposed for his conviction of a violation of probation.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 41 of 73

**Brown v. Peters, Not Reported in F.Supp. (1997)**

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss—the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987).

**\*2** Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." Smiley v. Davis, 1988 WL 78306, \*2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P. 12(b) (6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); Chambrier v. Leonardo, 1991 WL 44838, \*1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); Schoolfield v. Dep't of Correction, 1994 WL 119740, \*2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); Vargas v. Keane, 1994 WL 693885, \*1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, \*1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 43 of 73

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

 **\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous. [1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.


CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.


**ORDER and REPORT–RECOMMENDATION**

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.


**BACKGROUND**

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

 **\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 44 of 73

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 45 of 73

Brown v. Peters, Not Reported in F.Supp. (1997)

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

C. Motion to Dismiss by Herman, Stewart and Stanford.

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

D. Plaintiff's "John Doe" Claims.

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

E. Discovery Motions.

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 6:23-cv-01160-GTS-ML    Document 4    Filed 12/21/23    Page 46 of 73

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to ⚑ 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* ⚑ *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing ⚑ *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); ⚑ 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

End of Document    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 47 of 73

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of
Minnesota and Olmested County Court Systeam, and
State of Minnesota, Saint Peter State Hospital, Doctor
Gammel Stephelton, et el Erickson, North West Bank
and Trust, Olmested County Social Service, J.C. Penny
Insurnce, Metmore Finicial, Traveler Insurnce, Comecial
Union Insurnce, Hirman Insurnce, Amrican State
Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi
Insurnce, Steven Youngquist, Kent Chirstain, Micheal
Benson, United Airline, Kowate Airline, Fordmotor
Cridite, First Bank Rochester, George Restwich,
British Airways, Western Union, Prudenial Insurnce,
T.C.F. Bank, Judge Sandy Kieth, Judge Niergari,
Olmestead County Judgering, Judge Mores, Judge
Jacobson, Judge Challien, Judge Collin, Judge Thomase,
Judge Buttler, Judge Morke, Judge Moweer, Sera
Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn.,
St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel,
for Hubert H. Humphry, III, Judicial System of the State
of Minnesota, St. Peter Regional Treatment Center, Gerald
Gammell, MD, William Erickson, MD, Thomas Stapleton,
MD, the Honorable James L. Mork, Chief Judge Anne
Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge
Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon,
Michael J. Holland, of counsel, for British Airways, P.L.C.
and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths,
of counsel, for Olmsted County, Raymond Schmitz, Susan
Mundahl, Norwest Bank Minnesota, N.A. (the Northwest
Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A.,
Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for
J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of
counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert
J. Smith, of counsel, for Travelers Ins. Companies; Hirman
Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas
N. Kaufmann, of counsel, for American States Ins. Co. and
Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F.
Larkin, Asst. U. S. Atty., of counsel, for Michael Benson,
Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F.
Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P., Watertown, NY,
George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this
action, plaintiff Mina Pourzandvakil has filed three amended
complaints and ten motions. She also has sought and received
entry of default against ten defendants, none of whom she
properly served. She twice has sought and been denied
temporary restraining orders. She has included in her action
defendants with no apparent connection to this forum, that
were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of
defendants have filed a total of twelve motions, some seeking
vacation of the defaults entered against them, some seeking
dismissal and others seeking both. We grant defendants'
motions insofar as they seek vacation of the clerk's entries of
default and dismissal of the complaint. We vacate *sua sponte*

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 48 of 73

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.

BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*) [2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper [3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 49 of 73

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 6:23-cv-01160-GTS-ML    Document 4    Filed 12/21/23    Page 50 of 73

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

## II. The Jurisdictional Arguments

**\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

### A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

### B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

⚑ *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

**\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** 28 U.S.C. § 1391(a). Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

*Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to

Case 6:23-cv-01160-GTS-ML    Document 4    Filed 12/21/23    Page 52 of 73

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits."

*Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See* *Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She

also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil*

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 53 of 73

Pourzancakil v. Humphry, Not Reported in F.Supp. (1995)

*v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting 🚩 *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

 **\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 🚩 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under 🚩 Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." 🚩 *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. 🚩 *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See* 🚩 *Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf.* 🚩 *Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

## IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See* 🚩 *Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

## CONCLUSION

 **\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See* 🚩 *Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); 🚩 *Orange Theatre Corp. v. Rayhertz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740(1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 54 of 73

However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1    Names in the caption are spelled to reflect plaintiff's complaint.

2    Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3    Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4    The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5    The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6    We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a) (2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 6:23-cv-01160-GTS-ML   Document 4   Filed 12/21/23   Page 55 of 73

affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑ 28 U.S.C. § 1332.

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 8608724

Only the Westlaw citation is currently available.

United States Court of Appeals, Second Circuit.

E. Jean CARROLL, Plaintiff-

Counter-Defendant-Appellee,

v.

Donald J. TRUMP, in his personal capacity,

Defendant-Counter-Claimant-Appellant.

Nos. 23-1045-cv (L) & 23-1146-cv (Con)

|

August Term 2023

|

Argued: October 23, 2023

|

Decided: December 13, 2023

**Synopsis**

**Background:** Plaintiff filed state court action alleging that former United States President defamed her by claiming that she had fabricated her account of him sexually assaulting her years before he was elected President. Following removal, the United States District Court for the Southern District of New York, Lewis A. Kaplan, J., denied former President's motion for summary judgment or for leave to amend his answer, 2023 WL 4393067, and granted in part plaintiff's motion to strike defendant's affirmative defenses, 2023 WL 5017230. Former President appealed.

**Holdings:** The Court of Appeals, Cabranes, Circuit Judge, held that:

[1] it had appellate jurisdiction under collateral order doctrine to review district court's denial of President's claim of absolute immunity;

[2] as a matter of first impression, presidential immunity is waivable;

[3] President waived his presidential immunity defense;

[4] district court did not abuse its discretion when it denied President's request for leave to amend his answer to add defense of presidential immunity;

[5] plaintiff's filing of amended complaint did not revive President's presidential immunity defense;

[6] considerations of judicial economy and efficiency favored district court's retention of jurisdiction over action while appeal was pending; and

[7] it lacked appellate jurisdiction over district court's order denying President's summary judgment motion.

Affirmed in part, dismissed in part, and remanded.

**Procedural Posture(s):** Motion for Summary Judgment; Motion to Amend Pleading (Other than Complaint or Petition); Motion to Strike Affirmative Defenses; Interlocutory Appeal.

West Headnotes (29)

**[1]** **Federal Civil Procedure** 🔑 Affirmative Defense or Avoidance

**Federal Courts** 🔑 Waiver, estoppel, and consent

Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at outset of litigation, but courts based on subject-matter jurisdiction—courts' statutory or constitutional power to adjudicate case—are nonwaivable, and defendants can raise such defenses at any stage in litigation.

**[2]** **Estoppel** 🔑 Waiver Distinguished

**Estoppel** 🔑 Nature and elements of waiver

Term "waiver" is best reserved for litigant's intentional relinquishment of known right; where litigant's action or inaction is deemed to incur consequence of loss of right, or defense, term "forfeiture" is more appropriate.

**[3]** **Constitutional Law** 🔑 Executive privilege and immunity

**United States** 🔑 Judicial intervention; immunity

Presidential immunity is defense that stems from President's unique office, rooted in constitutional tradition of separation of powers and supported by Nation's history, and entitles President to absolute immunity from damages liability for acts within outer perimeter of his official responsibilities.

**[4]    District and Prosecuting Attorneys** 👈 Liabilities for official acts, negligence, or misconduct

Prosecutorial immunity is form of absolute immunity that shields prosecutor acting in role of advocate in connection with judicial proceeding for all acts intimately associated with judicial phase of criminal process.

**[5]    Judges** 👈 Liabilities for official acts

Judges are entitled to absolute judicial immunity for acts committed within their judicial discretion.

**[6]    Federal Courts** 👈 Immunity

Court of Appeals reviews district court's determination that defendant waived his presidential immunity defense for abuse of discretion.

**[7]    Federal Courts** 👈 Summary judgment
**Federal Courts** 👈 Immunity

Court of Appeals reviews district court's denial of summary judgment and its determination that presidential immunity can be waived de novo.

**[8]    Federal Courts** 👈 Immunity

Court of Appeals had appellate jurisdiction under collateral order doctrine to review district court's determination that former United States President was not entitled to absolute immunity in defamation action.

**[9]    United States** 👈 Judicial intervention; immunity

Presidential immunity is not jurisdictional defense, and thus is subject to waiver.

**[10]    Civil Rights** 👈 Good faith and reasonableness; knowledge and clarity of law; motive and intent, in general

Qualified immunity shields officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which reasonable person would have known.

**[11]    Public Employment** 👈 Absolute immunity

Absolute immunity confers public official with complete protection from civil suit.

**[12]    Courts** 👈 Previous Decisions as Controlling or as Precedents

If decision simply states that court is dismissing for lack of jurisdiction when some threshold fact has not been established, it is understood as drive-by jurisdictional ruling that receives no precedential effect.

**[13]    Federal Civil Procedure** 👈 Immunity

United States President waived his presidential immunity defense in defamation action against him by failing to invoke defense in his answer to plaintiff's original complaint against him.

**[14]    Federal Courts** 👈 Pleading

Court of Appeals reviews district court's denial of leave to amend for abuse of discretion, unless denial was based on interpretation of law, such as futility, in which case Court of Appeals reviews legal conclusion de novo.

**[15]**    **Federal Civil Procedure** 🔑 **Time for amendment**

**Federal Civil Procedure** 🔑 **New defense**

District court did not err, much less abuse its discretion, when it denied United States President's request for leave to amend his answer in defamation action to add defense of presidential immunity on grounds of undue delay and prejudice; three years passed between President's answer and his request for leave to amend his answer, discovery had closed, and plaintiff would have engaged in discovery on whether President's actions fell within his official duties if he had raised presidential immunity before discovery closed, but declined to do so to avoid prolonging litigation and creating complex executive privilege fights.

**[16]**    **Federal Courts** 🔑 **Abuse of discretion in general**

"Abuse of discretion" is non-pejorative term of art that implies no misconduct on district court's part; term simply describes circumstance in which district court bases its ruling on erroneous view of law or on clearly erroneous assessment of evidence, or renders decision that cannot be located within range of permissible decisions.

**[17]**    **Federal Civil Procedure** 🔑 **Injustice or prejudice**

In gauging whether proposed amendment to pleading would prejudice party, court considers, among other factors, whether amendment would require opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay resolution of dispute.

**[18]**    **Federal Civil Procedure** 🔑 **Time for amendment in general**

**Federal Civil Procedure** 🔑 **Injustice or prejudice**

Although mere delay, absent showing of bad faith or undue prejudice, does not provide basis for district court to deny right to amend pleading,

the longer the period of unexplained delay, the less will be required of nonmoving party in terms of showing of prejudice.

**[19]**    **Federal Civil Procedure** 🔑 **Time for amendment in general**

**Federal Civil Procedure** 🔑 **Injustice or prejudice**

Requests to amend pleading that come at late stage of litigation, after discovery has closed and motion for summary judgment has been filed, are more likely to be prejudicial.

**[20]**    **Federal Courts** 🔑 **Pleading**

Court of Appeals reviews district court decision striking affirmative defense de novo.

**[21]**    **Federal Civil Procedure** 🔑 **Effect of amendment**

Although amended complaint ordinarily supersedes original, and renders it of no legal effect, amended complaint does not automatically revive all defenses and objections that defendant has waived in response to original complaint.

**[22]**    **Alternative Dispute Resolution** 🔑 **Waiver or Estoppel**

**Federal Civil Procedure** 🔑 **Effect of amendment**

**Federal Courts** 🔑 **Waiver, estoppel, and consent**

**Federal Courts** 🔑 **Waiver, estoppel, and consent**

**Process** 🔑 **Waiver of defects and objections**

Defenses that involve core issue of party's willingness to submit dispute to judicial resolution, such as lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service, or existence of arbitration agreement, are not automatically revived by submission of amended complaint if initially waived; to revive such claims, party

must show that amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy.

**[23]** **Federal Civil Procedure** 🔑 Effect of amendment

**Federal Civil Procedure** 🔑 Affirmative Defense or Avoidance

Plaintiff's filing of amended complaint in defamation action against United States President did not revive President's previously-waived presidential immunity defense, and thus district court did not err in striking presidential immunity as affirmative defense from his answer to amended complaint, where President did not identify any changes to complaint that, in fairness, nullified his earlier waiver and allowed him to reassess his strategy.

**[24]** **Federal Courts** 🔑 Effect of Transfer of Cause or Proceedings Therefor

Filing of notice of appeal ordinarily divests district court of jurisdiction over issues decided in order being appealed, but its application is guided by concerns of efficiency and is not automatic.

**[25]** **Federal Courts** 🔑 Effect of Transfer of Cause or Proceedings Therefor

District courts may retain jurisdiction over issues decided in order being appealed if appeal is frivolous.

**[26]** **Federal Courts** 🔑 Interlocutory or defective appeal

Considerations of judicial economy and efficiency favored district court's retention of jurisdiction over defamation action against United States President during pendency of his interlocutory appeal of district court's orders denying him leave to amend his answer to assert presidential immunity and striking his amended answer, even if President's appeal was

not frivolous; to hold otherwise would require district court on remand to possibly undertake rather pointless exercise of re-adopting orders it had issued since date President filed notice of appeal.

**[27]** **Federal Courts** 🔑 Summary Judgment

Orders denying summary judgment are, in general, not immediately appealable.

**[28]** **Federal Courts** 🔑 Interlocutory, Collateral, and Supplementary Proceedings and Questions; Pendent Appellate Jurisdiction

Collateral-order doctrine appeals do not render other aspects of case immediately reviewable unless they are inextricably intertwined or necessary to ensure meaningful review of collateral orders.

**[29]** **Federal Courts** 🔑 As to immunity

District court's denial of United States President's motion for summary judgment in defamation action against him on ground that his statements about plaintiff were not defamatory per se under state law was not inextricably intertwined with or necessary to ensure meaningful review of district court's denial of presidential immunity, and thus Court of Appeals lacked appellate jurisdiction over district court's order denying President's summary judgment motion on interlocutory review of order denying immunity.

On Appeal from the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*).

**Attorneys and Law Firms**

Joshua Matz (Kate Harris, Roberta A. Kaplan, Trevor W. Morrison, on the brief), Kaplan Hecker & Fink LLP, New York, NY, for Plaintiff-Counter-Defendant-Appellee E. Jean Carroll.

Michael T. Madaio (Alina Habba, on the brief), Habba Madaio & Associates LLP, Bedminster, NJ, for Defendant-Counter-Claimant-Appellant Donald J. Trump.

Before: Cabranes, Chin, and Kahn, Circuit Judges.

**Opinion**

José A. Cabranes, Circuit Judge:

**\*1** **[1]** **[2]** Ordinarily, defendants are deemed to have waived or forfeited defenses that they did not raise at the outset of the litigation. [1] But defenses based on subject-matter jurisdiction—"the courts' statutory or constitutional power to adjudicate the case" [2]—are nonwaivable. Defendants can raise such defenses "at any stage in the litigation." [3]

**[3]** **[4]** **[5]** Presidential immunity is a defense that stems from "the President's unique office, rooted in the constitutional tradition of the separation of powers and supported by our history," and entitles the President to "absolute ... immunity from damages liability for acts within the outer perimeter of his official responsibilities." [4]

For example, the Supreme Court held in *Nixon v. Fitzgerald* that presidential immunity protected former President Richard Nixon from a lawsuit by an ex-Air Force employee who alleged that Nixon fired him in retaliation for testifying before Congress about cost overruns. [5] Conversely, the Court held in *Clinton v. Jones* that presidential immunity did not shield President Clinton from civil liability for actions allegedly taken when he was Governor of Arkansas because they were not official presidential acts. [6]

**\*2** This case presents a vexing question of first impression: whether presidential immunity is waivable. We answer in the affirmative and further hold that Donald J. Trump ("Defendant") waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer to E. Jean Carroll's ("Plaintiff's") complaint, which alleged that Defendant defamed her by claiming that she had fabricated her account of Defendant sexually assaulting her in the mid-1990s.

Accordingly, we **AFFIRM** the July 5, 2023 order of the United States District Court for the Southern District of New York (Lewis A. Kaplan, *Judge*) denying Defendant's motion for summary judgment insofar as it rejected Defendant's

presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

## I. BACKGROUND

The relevant facts in this appeal are undisputed. We summarize them below.

### A. Factual Background

On June 21, 2019, Plaintiff publicly accused Defendant of sexually assaulting her in the mid-1990s. [7] Defendant, who was President of the United States at the time of the accusations, denied Plaintiff's claims in a series of public statements. In the first, released that same day, he claimed that "it never happened," he "never met" Plaintiff, and that "[s]he is trying to sell a new book—that should indicate her motivation." [8] The next day, he stated that "[t]his is a woman who has also accused other men of things ... It is a totally false accusation." [9]

On November 4, 2019, Plaintiff responded by suing Defendant for defamation in New York State Supreme Court. Defendant filed his answer on January 23, 2020. On September 8, 2020, the United States removed the case to the United States District Court for the Southern District of New York pursuant to the Westfall Act. [10]

### B. Procedural Background

**\*3** On December 22, 2022, Defendant moved for summary judgment. [11] In his reply brief, filed on January 19, 2023, he raised for the first time the argument that presidential immunity barred liability. On July 5, 2023, the District Court denied Defendant's motion for summary judgment after

determining that Defendant waived presidential immunity and denied Defendant's request for leave to amend his answer to add presidential immunity as a defense ("July 5 Order"). [12] The Court denied Defendant's request for leave to amend on two independent grounds: first, that the request was futile, and second, that Defendant unduly delayed in raising the defense and granting the request would prejudice Plaintiff. [13] The Court also rejected Defendant's argument that his statements were not defamatory per se. [14] Defendant appealed the July 5 Order on July 19, 2023.

Meanwhile, on May 22, 2023, Plaintiff filed an amended complaint that added, *inter alia*, more statements by Defendant alleging that Plaintiff's accusations were false and politically motivated. Defendant filed his answer to Plaintiff's amended complaint on June 27, 2023. The amended answer for the first time raised presidential immunity as an affirmative defense. On August 7, 2023, the District Court struck Defendant's presidential immunity defense from his amended answer on the ground that it had been waived and, even if not, "would have been insufficient as a defense" ("August 7 Order"). [15] On August 10, 2023, Defendant appealed the August 7 Order.

Defendant sought a stay from the District Court, arguing that his appeal of the District Court's July 5 Order, which rejected Defendant's presidential immunity defense, divested the District Court of jurisdiction. On August 18, 2023, the District Court denied Defendant's stay motion upon determining his appeal to be frivolous. [16] Defendant then sought an emergency stay from our Court, which a motions panel denied on September 13, 2023. The same day, the motions panel ordered the consolidation of Defendant's appeals of the July 5 Order and the August 7 Order and set an expedited briefing schedule.

## II. DISCUSSION

This case concerns appeals from two related orders by the District Court. The July 5 Order denied Defendant's motion for summary judgment on the ground that Defendant waived his presidential immunity defense and further denied Defendant's request for leave to amend his answer to add presidential immunity as an affirmative defense. The August 7 Order struck Defendant's affirmative defense of presidential immunity from his answer to Plaintiff's amended complaint on the ground that Defendant had already waived this defense.

**\*4** We hold that presidential immunity is waivable and that Defendant waived this defense. [17] Thus, the District Court did not err in its order denying Defendant's motion for summary judgment, nor did it err, much less "abuse its discretion," in denying his belated request for leave to amend his answer to add presidential immunity as a defense. [18] We also hold that the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. [19] Nor did the District Court err in retaining jurisdiction after Defendant filed his notice of appeal on July 19, 2023. [20] Finally, we hold that we lack appellate jurisdiction to consider whether Defendant's statements were defamatory per se. [21]

## A. Whether Defendant Waived Presidential Immunity [22]

**[6]    [7]    [8]**   Is presidential immunity waivable? And if so, did Defendant waive it? The answer to both questions is yes.

### 1. Whether Presidential Immunity Is Waivable

**[9]    [10]    [11]**   Defendant argues that presidential immunity is a jurisdictional defense and is thus nonwaivable. [23] We disagree. The Supreme Court recognized in *Nevada v. Hicks* that "[t]here is no authority whatever for the proposition that absolute- and qualified-immunity defenses pertain to the court's jurisdiction." [24] And we have repeatedly distinguished absolute immunity defenses from defenses based on subject-matter jurisdiction. [25]

**[12]**   Rather than acknowledge *Hicks* or our precedents, Defendant points to scattered references to "jurisdiction" in Supreme Court cases involving presidential immunity. [26] But as we have recently been reminded by the Supreme Court, "[t]he mere fact that [the Supreme] Court previously described something without elaboration as jurisdictional ... does not end the inquiry." [27] We must ask if the prior decision addressed whether the provision or defense is " 'technically jurisdictional'—whether it truly operates as a limit on a court's subject-matter jurisdiction—and whether anything in the decision 'turn[ed] on that characterization.' " [28] Accordingly, "[i]f a decision simply states that 'the court

is dismissing "for lack of jurisdiction" when some threshold fact has not been established,' it is understood as a 'drive-by jurisdictional ruling' that receives no precedential effect." [29]

**\*5** None of the cases on which Defendant relies indicate that presidential immunity is jurisdictional—indeed, quite the opposite. Defendant relies primarily on the following passage in 🚩*Nixon*:

> [A] court, before exercising jurisdiction, must balance the constitutional weight of the interest to be served against the dangers of intrusion on the authority and functions of the Executive Branch. When judicial action is needed to serve broad public interests ... the exercise of jurisdiction has been held warranted. In the case of this merely private suit for damages based on a President's official acts, we hold it is not. [30]

But 🚩*Nixon* hurts, not helps, Defendant's case. The passage quoted above follows a threshold analysis of whether the Supreme Court had subject-matter jurisdiction over the dispute. [31] Pursuant to the usual practice in the federal courts, [32] only once assured of its subject-matter jurisdiction did the Supreme Court proceed to the "merits"—*i.e.*, to whether the President was entitled to immunity. [33]

Nor do the passing references to "jurisdiction" in 🚩*Mississippi v. Johnson* or in 🚩*Clinton v. Jones* support Defendant's position. In 🚩*Johnson*, the question was whether a state could obtain an injunction to prevent the President from carrying out an Act of Congress, not whether a President is liable for damages in a private civil suit. [34] And like 🚩*Nixon*, 🏳*Clinton* first held that the Supreme Court had subject-matter jurisdiction before proceeding to the immunity question. [35] Neither 🚩*Nixon* nor 🏳*Clinton* addressed whether presidential immunity is "technically jurisdictional," nor did "anything in the decision[s] turn[ ] on that characterization." [36] Thus, 🏳*Clinton*'s reference to

"jurisdiction"—the Court's determination that "[t]he Federal District Court has jurisdiction to decide this case" [37]—is, like 🚩*Nixon*'s, best characterized as a "drive-by jurisdictional ruling" that "should be accorded no precedential effect" because it ultimately does not bear on the question of whether presidential immunity is jurisdictional. [38]

**\*6** All in all, Defendant provides no case that turns on whether presidential immunity is jurisdictional, much less one holding that it *is* jurisdictional, and 🚩*Nixon*—described by Defendant's counsel at oral argument as the "main case" and "the only binding precedent" on presidential immunity—points in the opposite direction. [39]

Next, Defendant contends that "the separation-of-powers doctrine" renders presidential immunity nonwaivable because "an impermissible inter-branch conflict will always arise when a court seeks to impute civil liability on a President for the performance of his official acts." [40] But separation-of-powers considerations militate in favor of, not against, recognizing presidential immunity as waivable. A President's autonomy should be protected; thus, a President *should* be able to litigate if he chooses to do so. Indeed, at least one President has declined to invoke presidential immunity, opting instead to settle two civil suits out of court. [41] Recognizing presidential immunity as a jurisdictional defense would, the District Court observed, "risk encroachment by the judiciary into the president's domain by eliminating the president's ability to choose" whether to litigate. [42]

Moreover, avoiding undue judicial intrusion on the executive branch undergirds the doctrines of both prosecutorial immunity and presidential immunity. That said, Defendant does not dispute that prosecutorial immunity is waivable. Rather, he argues that the President's unique constitutional role distinguishes presidential immunity from other forms of absolute immunity such as prosecutorial immunity and judicial immunity. [43] But as Defendant acknowledges, [44] the Supreme Court has made clear that absolute immunity for prosecutors and judges, on the one hand, and presidential immunity on the other, are closely related. "As is the case with prosecutors and judges," the Court stated in 🚩*Nixon*, "a President must concern himself with matters likely to 'arouse the most intense feelings.' " [45] And the Court has recently reinforced the "careful analogy" it drew in 🚩*Nixon*, reasoning that "a President, like [judges and prosecutors],

must ... not be made 'unduly cautious in the discharge of [his official] duties' by the prospect of civil liability for official acts." [46]

**\*7**  Nor do the Court's references in 🚩*Nixon* and 🚩*Harlow v. Fitzgerald*—🚩*Nixon*'s companion case—to the President's unique status in comparison with other Government officials support Defendant's position. [47] Those passages contrasted the President to other *executive* officials —such as presidential aides and Cabinet officers—to conclude that, unlike the qualified immunity of these lower-level executive officials, presidential immunity is absolute. [48] And although the Supreme Court in 🚩*Nixon* recalled the "special solicitude due to claims alleging a threatened breach of essential Presidential prerogatives under the separation of powers," the passage in question concerned not whether presidential immunity was waivable, but whether the district court's order rejecting Nixon's immunity defense was a "serious and unsettled" question that could be raised on interlocutory appeal. [49]

Finally, Defendant argues that Article III of the Constitution, which vests judicial power in the federal courts, makes presidential immunity nonwaivable. He reasons as follows. First, violations of Article III—for example, the improper exercise of federal judicial power by a non-Article III entity— are not waivable. Next, separation-of-powers considerations inform both Article III and presidential immunity. Thus, presidential immunity is not waivable. But apart from 🚩*Nixon* (discussed above), none of the cases Defendant draws to our attention concern immunity at all, much less presidential immunity. [50] More to the point, it is not accurate to assert that separation-of-powers defenses or arguments are *ipso facto* nonwaivable. [51]

**\*8**  To summarize: notwithstanding scattered references to "jurisdiction" in some presidential immunity cases, the Supreme Court has indicated that immunity defenses are not jurisdictional, and that presidential immunity is to be treated like other forms of immunity that Defendant does not dispute are waivable. Moreover, 🚩*Nixon*—the leading presidential immunity case—treats presidential immunity as nonjurisdictional. Finally, recognizing presidential immunity as waivable reinforces, not undermines, the separation of powers and the President's decisionmaking authority by affording the President an opportunity to litigate if he so

chooses. Accordingly, we hold that presidential immunity is waivable.

### 2. Whether Defendant Waived Presidential Immunity

**[13]**  Having determined that presidential immunity is waivable, we reach the question: Did Defendant waive his presidential immunity defense? We hold that he did.

Defendant filed his answer to Plaintiff's original complaint in New York state court in January 2020. But the answer did not invoke presidential immunity. The District Court thus determined that Defendant had waived this defense, a holding Defendant does not challenge in this appeal. [52] Indeed, Defendant's counsel conceded at oral argument that assuming the defense of presidential immunity is waivable, Defendant had waived that defense. [53]

Accordingly, the District Court did not err in denying Defendant's motion for summary judgment on the ground that he had waived his presidential immunity defense. We turn next to whether the District Court correctly rejected his attempt to revive it—first in his request for leave to amend his answer, then in his answer to Plaintiff's amended complaint.

### B. Defendant's Request for Leave to Amend

**[14]**  **[15]**  **[16]**  "We review a district court's denial of leave to amend for abuse of discretion, unless the denial was based on an interpretation of law, such as futility, in which case we review the legal conclusion *de novo*." [54]  The District Court did not err, much less "abuse its discretion," [55] when it denied Defendant's request for leave to amend his answer to add the defense of presidential immunity on grounds of undue delay and prejudice. [56]

First, Defendant unduly delayed in raising presidential immunity as a defense. [57] Three years passed between Defendant's answer and his request for leave to amend his answer. A three-year delay is more than enough, under our precedents, to qualify as "undue." [58] And Defendant's excuse for not timely raising the defense—that the question of whether the Westfall Act immunized Defendant was pending before the District Court, this Court, and the District of Columbia Court of Appeals between September 2020 and

June 2023—is unpersuasive. [59] Defendant does not explain how the Westfall Act dispute precluded him from raising a defense of presidential immunity. Indeed, Defendant first raised presidential immunity in January 2023—that is, during the pendency of the Westfall Act dispute.

**\*9** **[17]** **[18]** **[19]** We next conclude that Defendant's delay unduly prejudiced Plaintiff. "Prejudice," like "abuse of discretion," is a legal term of art. [60] In gauging whether a proposed amendment would prejudice a party, "we consider, among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute." [61] Although "mere delay, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." [62] Finally, requests to amend that come at a late stage of the litigation, after discovery has closed and a motion for summary judgment has been filed, are more likely to be prejudicial. [63]

Had Defendant raised presidential immunity before discovery closed, Plaintiff claims, she would have engaged in discovery on whether Defendant's actions fell within his official duties. [64] First, Plaintiff would have asked Defendant for more detail on the process through which he issued and prepared the June 2019 statements, including how the process compared to his pre- and post-presidential processes. [65] Second, Plaintiff would have sought third-party discovery from White House personnel allegedly involved in preparing and issuing the statements. [66] Third, Plaintiff would have sought expert testimony from former White House officials and requested internal White House documents from the National Archives regarding former presidents' processes for issuing statements denying wrongdoing. [67] Plaintiff's counsel represents that they avoided doing so because "the risk of prolonging the litigation and creating complex executive privilege fights did not seem worth it to us, as measured against the absence of an absolute immunity defense, which Mr. Trump had not raised." [68]

Against all this, Defendant contends that the discovery Plaintiff would have pursued regarding presidential immunity (whether the statements fell within the President's official duties) was already explored by Plaintiff in the discovery she

pursued regarding the Westfall Act (whether the statements fell within the President's scope of employment). [69] But as counsel for Defendant concedes, the two tests are different. [70] The Westfall Act's scope-of-employment test is subjective, while presidential immunity's official-duties test is objective. [71] And Defendant has no response to Plaintiff's contention that Defendant's failure to timely raise presidential immunity informed her decision not to engage in discovery on whether Defendant's actions fell within his official duties.

In sum, three years passed before Defendant raised the defense of presidential immunity, significant additional resources to conduct discovery would be required were Defendant to amend his answer, and the request arose at a late stage of litigation—after discovery closed and Defendant moved for summary judgment. Under these circumstances, we hold that the District Court did not "abuse its discretion" in denying Defendant's request for leave to amend his answer on grounds of undue delay and prejudice.

### C. Defendant's Answer to Plaintiff's Amended Complaint

**\*10** After the District Court denied Defendant's request for leave to amend his answer, Plaintiff filed an amended complaint. In response, Defendant filed an answer to the amended complaint asserting presidential immunity. The District Court struck Defendant's presidential immunity defense from his amended answer, reasoning that "[t]here is nothing new in the amended complaint that would make Mr. Trump's presidential immunity defense any more viable or persuasive now than it would have been before." [72]

**[20]** **[21]** **[22]** We review a district court decision striking an affirmative defense *de novo*. [73] Although "an amended complaint ordinarily supersedes the original, and renders it of no legal effect," an amended complaint "does not automatically revive all of the defenses and objections that a defendant has waived in response to the original complaint." [74] Defenses that "involve[ ] the core issue of a party's willingness to submit a dispute to judicial resolution," such as lack of personal jurisdiction, improper venue, insufficiency of process, insufficiency of service, or the existence of an arbitration agreement, are "not automatically revived by the submission of an amended complaint" if initially waived. [75] To revive such claims, a party "must show

that the amended complaint contains charges that, in fairness, should nullify its earlier waiver and allow it to reassess its strategy." [76]

 **[23]**  Presidential immunity involves the party's willingness to submit the dispute to judicial resolution and is distinguishable from revivable, merits-based defenses. [77] Indeed, the only reason we have jurisdiction over this appeal is that the denial of presidential immunity is a collateral order, a requirement of which is that the issue on appeal be "completely separate from the merits of the action." [78] What's more, Defendant does not identify any changes to the complaint "that, in fairness, should nullify [his] earlier waiver and allow [him] to reassess [his] strategy." [79] Accordingly, in the unusual circumstances presented here, we hold that the District Court did not err in striking presidential immunity as an affirmative defense from Defendant's answer to Plaintiff's amended complaint.

### D. Whether the District Court Retained Jurisdiction After Defendant Appealed

 **[24]**   **[25]**   "The filing of a notice of appeal ordinarily divests the district court of jurisdiction over issues decided in the order being appealed." [80] We have previously noted that "[t]he divestiture of jurisdiction rule is, however, not a per se rule. It is a judicially crafted rule rooted in the interest of judicial economy, designed to avoid confusion or waste of time resulting from having the same issues before two courts at the same time. Hence, its application is guided by concerns of efficiency and is not automatic." [81] For example, district courts may retain jurisdiction notwithstanding appeal if the appeal is frivolous. [82]

 **\*11**   **[26]**  The District Court determined that it retained jurisdiction because Defendant's appeal was frivolous. We need not decide whether Defendant's appeal is frivolous, for we conclude that under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction. To hold otherwise would require the District Court on remand to possibly undertake the rather pointless exercise of re-adopting the orders it has issued since July 19, 2023, the date Defendant appealed the July 7 Order. [83] "[O]ur application of the divestiture rule must be faithful to the principle of judicial economy from which it springs," [84] and "it should not be

employed to defeat its purposes or to induce endless paper shuffling." [85] This Court has declined to apply the divestiture rule under similar circumstances in the past, and we reach the same result here. [86]

### E. Whether We May Consider Whether Defendant's Statements Were Defamatory Per Se

 **[27]**   **[28]**  Apart from appeals taken under the collateral order doctrine, [87] orders denying summary judgment are, in general, not immediately appealable. [88] And collateral-order doctrine appeals—such as Defendant's appeals of the July 5 Order and the August 7 Order—do not render other aspects of the case immediately reviewable unless they are "inextricably intertwined" or "necessary to ensure meaningful review" of the collateral orders. [89]

Defendant argues that none of his statements about Plaintiff were defamatory per se under New York law because they did not tend to cause injury to her trade, business, or profession, and that the District Court applied the wrong legal standard to his statements. [90]

 **[29]**  Far from being inextricably intertwined with or necessary to ensure meaningful review of the District Court's denial of presidential immunity, whether Defendant's statements fell within the outer perimeter of his official presidential duties has nothing to do with whether the statements qualify as defamatory per se. Because we have no appellate jurisdiction over the District Court's determination that Defendant's statements were defamatory per se, we do not consider Defendant's argument that the District Court erred in this respect.

### III. CONCLUSION

To summarize, we hold that:

 **\*12**  (1) Presidential immunity is a waivable defense.

(2) Defendant waived the defense of presidential immunity by failing to raise it as an affirmative defense in his answer.

(3) The District Court did not err in denying Defendant's motion for summary judgment insofar as it rejected

Defendant's presidential immunity defense on the ground that he had waived this defense.

(4) Defendant unduly delayed in raising presidential immunity as a defense, and permitting Defendant to amend his answer to add the defense would unduly prejudice Plaintiff. Thus, the District Court did not err, much less "abuse its discretion," in denying Defendant's request for leave to amend his answer to add presidential immunity as a defense.

(5) Presidential immunity is not a defense that is automatically revived by the submission of an amended complaint if initially waived. Thus, the District Court did not err in striking Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint.

(6) Under the singular circumstances presented here, considerations of judicial economy and efficiency favor the District Court's retention of jurisdiction after Defendant's notice of appeal was filed on July 19, 2023. Thus, the District Court did not err in retaining jurisdiction after July 19, 2023.

(7) Whether Defendant's statements about Plaintiff were defamatory per se is neither inextricably intertwined with nor necessary to ensure meaningful review of the District Court's denial of presidential immunity. Thus, we lack appellate jurisdiction to consider whether Defendant's statements about Plaintiff were defamatory per se.

Accordingly, we **AFFIRM** the July 5, 2023 order of the District Court denying Defendant's motion for summary judgment insofar as it rejected Defendant's presidential immunity defense and denied his request for leave to amend his answer to add presidential immunity as a defense. We likewise **AFFIRM** the District Court's August 7, 2023 order insofar as it struck Defendant's presidential immunity defense from his answer to Plaintiff's amended complaint. We **DISMISS** for lack of appellate jurisdiction the appeal of the District Court's July 5, 2023 order insofar as it determined that Defendant's statements about Plaintiff were defamatory per se. Finally, we **REMAND** the case to the District Court for further proceedings consistent with this opinion.

**All Citations**

--- F.4th ----, 2023 WL 8608724

---

## Footnotes

1    *See Kaplan v. Bank Saderat PLC*, 77 F.4th 110, 117 (2d Cir. 2023). "While the terms 'waiver' and 'forfeiture' are often used interchangeably because they have similar effects, they have slightly different meanings." *Id.* at 117 n.10. "The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or, as here, a defense, the term 'forfeiture' is more appropriate." *Doe v. Trump Corp.*, 6 F.4th 400, 409 n.6 (2d Cir. 2021) (quotation marks and comma omitted). E. Jean Carroll ("Plaintiff"), Donald J. Trump ("Defendant"), and the District Court refer to Defendant's failure to raise presidential immunity as "waiver." For purposes of this consolidated appeal, whether Defendant forfeited rather than waived presidential immunity matters not. Thus, "[w]e use the term ['waiver'] in this opinion for ease of discussion," but we express no view on whether Defendant intended to relinquish his presidential immunity defense, "which is a question of fact reserved for the district court." *Kaplan*, 77 F.4th at 117 n.10; *see, e.g.*, *LCS Grp., LLC v. Shire Dev. LLC*, No. 20-2319, 2022 WL 1217961, at *5 n.2 (2d Cir. Apr. 26, 2022) (summary order) ("Although it may be more accurate to refer to [Appellant] as having forfeited, rather than waived, many of the arguments it raises here, for convenience we refer to both their action and inaction here in terms of 'waiver.' ").

2    🚩 *Lightfoot v. Cendant Mortg. Corp.*, 580 U.S. 82, 92, 137 S.Ct. 553, 196 L.Ed.2d 493 (2017) (quotation marks omitted).

3    🚩 *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

4    🚩 *Nixon v. Fitzgerald*, 457 U.S. 731, 749, 756, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982) (quotation marks omitted). Other Government officials are likewise protected by absolute immunity under certain circumstances. For example, prosecutorial immunity is a form of absolute immunity that shields "[a] prosecutor acting in the role of an advocate in connection with a judicial proceeding ... for all acts 'intimately associated with the judicial phase of the criminal process.' " 🚩 *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting 🚩 *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)). And judges are entitled to absolute judicial immunity "for acts 'committed within their judicial discretion.' " *Peoples v. Leon*, 63 F.4th 132, 138 (2d Cir. 2023) (quoting 🚩 *Cleavinger v. Saxner*, 474 U.S. 193, 199, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)).

5    *See* 🚩 *Nixon*, 457 U.S. at 733-40, 756-58, 102 S.Ct. 2690.

6    🚩 *Clinton v. Jones*, 520 U.S. 681, 694-95, 117 S.Ct. 1636, 137 L.Ed.2d 945 (1997).

7    *See* E. Jean Carroll, *Hideous Men: Donald Trump Assaulted Me in a Bergdorf Goodman Dressing Room 23 Years Ago. But He's Not Alone on the List of Awful Men in My Life*, THE CUT (June 21, 2019), https://www.thecut.com/2019/06/donald-trumpassault-e-jean-carroll-other-hideous-men.html [https://perma.cc/HX9T-8MPK].

8    Appellant's Appendix ("A") 573.

9    *Id.* at 580. On June 24, 2019, Defendant further stated that "she's not my type" and that it "never happened." *Id.* at 590. As of November 15, 2023, Defendant's June 24 statement is no longer the subject of Plaintiff's defamation claim, although Plaintiff contends it remains relevant to the question of punitive damages. *See* Def. 28(j) Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 17, 2023), ECF No. 121; Pl. Letter, *Carroll v. Trump*, No. 23-1045 (Nov. 20, 2023), ECF No. 124. We take judicial notice of this development, *see* 🚩 *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992), but it does not alter our analysis.

10    The Westfall Act immunizes federal employees acting within the scope of their office or employment from tort liability. *See* 28 U.S.C. § 2679(b)(1). Under the Act, the United States may remove a state court civil case to federal court upon certification by the Attorney General that the employee was acting within the scope of his employment at the time of the alleged incident. *See id.* § 2679(d)(2); 🚩 *Osborn v. Haley*, 549 U.S. 225, 229-30, 127 S.Ct. 881, 166 L.Ed.2d 819 (2007). Whether the Westfall Act immunizes Defendant is not before us today. *Cf. Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (recounting the procedural history of this case's Westfall Act dispute and remanding to the District Court). After we remanded to the District Court, the Government decided not to issue Defendant a new Westfall Act certification in light of the filing of Plaintiff's amended complaint.

11    One month before Defendant moved for summary judgment, Plaintiff filed a separate lawsuit against Defendant for sexual assault and defamation. The defamation claim arose out of an October 2022 statement by Defendant denying Plaintiff's assault allegation. *See* Complaint, *Carroll v. Trump*, No. 22-cv-10016

("*Carroll II*') (S.D.N.Y. Nov. 24, 2022). In May 2023, the *Carroll II* jury awarded Plaintiff $5 million in damages. The verdict is the subject of a separate appeal currently pending before this Court. *See Carroll II*, *appeal docketed*, No. 23-793 (2d Cir. May 11, 2023).

12    Memorandum Opinion Denying Defendant's Motion for Summary Judgment (Corrected), *Carroll v. Trump* ("*Carroll I*"), No. 20-cv-7311, ——— F.Supp.3d ———, 2023 WL 4393067 (S.D.N.Y. July 5, 2023) ("July 5 Order").

13    *Id.* at ——— – ———, 2023 WL 4393067, at *9-13.

14    *Id.* at ——— – ———, 2023 WL 4393067, at *13-14.

15    Memorandum Opinion Granting Plaintiff's Motion to Dismiss Defendant's Counterclaim and Certain Purported Affirmative Defenses, *Carroll I*, No. 20-cv-7311, ——— F.Supp.3d at ———, 2023 WL 5017230, at *9 (S.D.N.Y. Aug. 7, 2023) ("August 7 Order"). The August 7 Order also dismissed Defendant's counterclaim that Plaintiff defamed him by accusing him of rape. *Id.* at ——— – ———, 2023 WL 5017230, at *5-8. The District Court's dismissal of Defendant's counterclaim is not before us today.

16    Memorandum Opinion Denying Defendant's Motion to Stay, *Carroll I*, No. 20-cv-7311, ——— F.Supp.3d at ——— – ———, 2023 WL 5312894, at *7-8 (S.D.N.Y. Aug. 18, 2023).

17    *See* Section II.A, *post*.

18    *See* Sections II.A-II.B, *post*.

19    *See* Section II.C, *post*.

20    *See* Section II.D, *post*.

21    *See* Section II.E, *post*.

22    We review the District Court's determination that Defendant waived his presidential immunity defense for "abuse of discretion." *See Amara v. Cigna Corp.*, 53 F.4th 241, 256 (2d Cir. 2022). We review the District Court's denial of summary judgment and its determination that presidential immunity can be waived *de novo*. *See* 🚩 *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012); *Berg v. Kelly*, 897 F.3d 99, 105 (2d Cir. 2018). We have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity. *See Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) ("As the existence of absolute immunity protects an official not only from liability but also from suit, the validity of the defense should be determined at an early stage. Hence, an interlocutory order rejecting the defense is immediately appealable under the collateral order doctrine to the extent that the rejection turned on an issue of law.").

23    *See* Def. Br. at 12-34; *see also* notes 1-6, *ante* (explaining concepts of waiver and presidential immunity).

24    🚩 533 U.S. 353, 373, 121 S.Ct. 2304, 150 L.Ed.2d 398 (2001); *see also Smith v. Scalia*, 44 F. Supp. 3d 28, 40 n.10 (D.D.C. 2014) (Jackson, *J.*) ("[A]bsolute judicial immunity is a non-jurisdictional bar."), *aff'd*, No. 14-cv-5180, 2015 WL 13710107 (D.C. Cir. 2015). Qualified immunity shields officials from civil damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 🚩 *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Absolute immunity, by contrast, "confers complete protection from civil suit." 🚩 *Tulloch*

*v. Coughlin*, 50 F.3d 114, 116 (2d Cir. 1995). The parties do not dispute that presidential immunity is a form of absolute, rather than qualified, immunity.

25   *See, e.g.*, *Chen v. Garland*, 43 F.4th 244, 252 n.6 (2d Cir. 2022); *Mitchell v. Fishbein*, 377 F.3d 157, 165 (2d Cir. 2004); *see also* *Beechwood Restorative Care Ctr. v. Leeds*, 436 F.3d 147, 154 n.3 (2d Cir. 2006) (holding absolute immunity defense to be waived because not adequately preserved for appellate review).

26   *See* Def. Br. at 15-16, 19, 22, 31 (quoting *Mississippi v. Johnson*, 71 U.S. 475, 500-01, 4 Wall. 475, 18 L.Ed. 437 (1867); *Nixon*, 457 U.S. at 754, 102 S.Ct. 2690; and *Clinton*, 520 U.S. at 710, 117 S.Ct. 1636).

27   *Wilkins v. United States*, 598 U.S. 152, 159-60, 143 S.Ct. 870, 215 L.Ed.2d 116 (2023) (quotation marks omitted).

28   *Id.* at 160, 143 S.Ct. 870 (quoting *Arbaugh*, 546 U.S. at 512, 126 S.Ct. 1235) (some quotation marks omitted).

29   *Id.* (quoting *Arbaugh*, 546 U.S. at 511, 126 S.Ct. 1235) (alteration adopted).

30   *Nixon*, 457 U.S. at 754, 102 S.Ct. 2690 (citations omitted); *see* Def. Br. at 19, 22-23, 30-31, 33.

31   *Nixon*, 457 U.S. at 741-43, 102 S.Ct. 2690; *see also* *id.* at 741, 102 S.Ct. 2690 ("Before addressing the merits of this case, we must consider two challenges to our jurisdiction.").

32   *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 671, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("We first address whether the Court of Appeals had subject-matter jurisdiction ...."); *In re Clinton Nurseries, Inc.*, 53 F.4th 15, 22 (2d Cir. 2022) ("At the outset, we must consider whether this Court has subject matter jurisdiction ...."); *Lanier v. Bats Exch., Inc.*, 838 F.3d 139, 146 (2d Cir. 2016) ("As a threshold matter, we must first satisfy ourselves that we have subject matter jurisdiction."); *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 137 (2d Cir. 2012) ("Notwithstanding our grave concerns regarding the merits of the complaint, we proceed, as we must, first to determine issues of subject matter jurisdiction.").

33   *Nixon*, 457 U.S. at 741, 743 n.23, 102 S.Ct. 2690.

34   *See generally* *Johnson*, 71 U.S. 475.

35   *See* *Clinton*, 520 U.S. at 685, 117 S.Ct. 1636.

36   *Wilkins*, 598 U.S. at 160, 143 S.Ct. 870 (quotation marks omitted).

37   *Clinton*, 520 U.S. at 710, 117 S.Ct. 1636.

38   *Wilkins*, 598 U.S. at 160-61, 143 S.Ct. 870 (quotation marks omitted and alteration adopted).

39    Oral Arg. Audio Recording at 4:14-22; *cf. Blassingame v. Trump,* Nos. 22-7030, 22-7031, ⸺ F.4th ⸺,
      2023 WL 8291481 (D.C. Cir. Dec. 1, 2023) (affirming district court's order denying Defendant's presidential
      immunity defense without analyzing whether the defense is jurisdictional).

40    Def. Br. at 12-13.

41    *See* Answer to Complaint, *Bailey v. Kennedy,* No. 757,200 (Cal. Super. Ct. Jan. 19, 1961); Answer to
      Complaint, *Hills v. Kennedy,* No. 757,201 (Cal. Super. Ct. Jan. 19, 1962); *see also* 🚩*Clinton,* 520 U.S. at 692,
      117 S.Ct. 1636 (summarizing the Kennedy litigation). In addition, lawsuits filed against Presidents Franklin
      D. Roosevelt and Harry S. Truman were dismissed without, it appears, either President invoking presidential
      immunity. *See* 🚩*Jones v. Clinton,* 72 F.3d 1354, 1362 n.10 (8th Cir. 1996), *aff'd,* 🚩520 U.S. 681, 117 S.Ct.
      1636, 137 L.Ed.2d 945.

42    July 5 Order, *Carroll I,* ⸺ F.Supp.3d at ⸺, 2023 WL 4393067, at *8.

43    Def. Br. at 28-30.

44    *Id.* at 28-29.

45    🚩*Nixon,* 457 U.S. at 751-52, 102 S.Ct. 2690 (quoting 🚩⚠*Pierson v. Ray,* 386 U.S. 547, 554, 87 S.Ct.
      1213, 18 L.Ed.2d 288 (1967)); *see also* 🚩*id.* at 758, 102 S.Ct. 2690 ("For the President, as for judges and
      prosecutors, absolute immunity merely precludes a particular private remedy for alleged misconduct in order
      to advance compelling public ends.").

46    🚩*Trump v. Vance,* ⸺ U.S. ⸺, 140 S. Ct. 2412, 2426, 207 L.Ed.2d 907 (2020) (quoting 🚩*Nixon,* 457
      U.S. at 752 n.32, 102 S.Ct. 2690).

47    *See* 🚩*Nixon,* 457 U.S. at 750, 102 S.Ct. 2690 ("The President's unique status under the Constitution
      distinguishes him from other executive officials."); 🚩*Harlow v. Fitzgerald,* 457 U.S. 800, 811 n.17, 102 S.Ct.
      2727, 73 L.Ed.2d 396 (1982) ("As we explained in [🚩*Nixon*], the recognition of absolute immunity for all of
      a President's acts in office derives in principal part from factors unique to his constitutional responsibilities
      and station. Suits against other officials—including Presidential aides—generally do not invoke separation-
      of-powers considerations to the same extent as suits against the President himself.").

48    🚩*Nixon,* 457 U.S. at 750, 102 S.Ct. 2690; 🚩*Harlow,* 457 U.S. at 811 & n.17, 102 S.Ct. 2727. For the
      difference between qualified immunity and absolute immunity, see note 24, *ante.*

49    🚩*Nixon,* 457 U.S. at 743, 102 S.Ct. 2690 (quotation marks omitted).

50    *See* Def. Br. at 23-27 (citing 🚩*Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 133 S.Ct. 1138, 185 L.Ed.2d 264
      (2013); 🚩*Lujan v. Defs. of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); 🚩*Commodity
      Futures Trading Comm'n v. Schor,* 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986); 🚩*Lo Duca v.
      United States,* 93 F. 3d 1100 (2d Cir. 1996); 🚩*Austin v. Healey,* 5 F.3d 598 (2d Cir. 1993); 🚩*Samuels,
      Kramer & Co. v. Comm'r,* 930 F.2d 975 (2d Cir. 1991); 🚩*Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665,
      682, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015); 🚩*Kuretski v. Comm'r,* 755 F.3d 929, 937 (D.C. Cir. 2014);

*Nixon*, 457 U.S. 731, 102 S.Ct. 2690; *Nixon*, 457 U.S. 731, 102 S.Ct. 2690 (Burger, C.J., concurring); *Johnson*, 71 U.S. 475).

51    *See* *Wellness Int'l Network*, 575 U.S. at 682 n.11, 135 S.Ct. 1932 ("The proposition that legal defenses based upon doctrines central to the courts' structural independence can never be waived simply does not accord with our cases.") (alteration adopted) (quoting *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 231, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995); *United States v. Donziger*, 38 F.4th 290, 303 (2d Cir. 2022) ("[S]tructural constitutional claims ... have no special entitlement to review. A party forfeits the right to advance on appeal a nonjurisdictional claim, structural or otherwise, that he fails to raise at trial.") (quoting *Freytag v. Comm'r*, 501 U.S. 868, 893-94, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (Scalia, *J.*, concurring in part and concurring in judgment)), *cert. denied*, ––– U.S. ––––, 143 S. Ct. 868, 215 L.Ed.2d 288 (2023); *United States v. Nelson*, 277 F.3d 164, 206 (2d Cir. 2002) ("[W]e do not imply that all claims of structural error ... are unwaivable.").

52    *See* July 5 Order, *Carroll I*, ––– F.Supp.3d at ––––– n.18, 2023 WL 4393067, at *5 n.18 ("It accordingly is clear that Mr. Trump does not dispute that if absolute presidential immunity can be waived, he in fact waived it in this case."). *See generally* Def. Br.

53    Oral Arg. Audio Recording at 9:59-10:33, 11:53-12:18.

54    *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quotation marks omitted).

55    " '[A]buse of discretion' ... is a nonpejorative term of art" that "implies no misconduct on the part of the district court." *United States v. Bove*, 888 F.3d 606, 607 n.1 (2d Cir. 2018). "The term simply describes the circumstance in which a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Id.* (quotation marks omitted and alterations adopted).

56    That the amendment would have been futile constituted an independent basis for the District Court's decision. *See* July 5 Order, *Carroll I*, ––– F.Supp.3d at ––––– – –––––, 2023 WL 4393067, at *9-11. Because we affirm the District Court's determination on grounds of undue delay and undue prejudice, we do not reach the question whether the proposed amendment would have been futile.

57    Black's Law Dictionary defines "undue" as "[e]xcessive or unwarranted." *Undue*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* *Groff v. DeJoy*, 600 U.S. 447, 469, 143 S.Ct. 2279, 216 L.Ed.2d 1041 (2023) (holding that, in the context of the phrase "undue hardship," "the modifier 'undue' means ... 'excessive' or 'unjustifiable' ") (quoting RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1547 (1966)).

58    *See, e.g.*, *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (1 year and 9 months); *Zahra v. Town of Southold*, 48 F.3d 674, 686 (2d Cir. 1995) (2 years and 3.5 months); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (2 years and 9 months); *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 726 (2d Cir. 2010) (3 years); *see also* *City of New York v. Grp. Health Inc.*, 649 F.3d 151, 158 (2d Cir. 2011) (3 years and 2 months). To be sure, we have allowed amendments to pleadings when similar or longer lengths of time have passed. *See* *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 235 (2d Cir. 1995) ("more than four years"); *Richardson Greenshields Sec., Inc.*

*v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases). But those cases did not involve a finding of prejudice to the non-moving party.

59   *See* note 10, *ante* (describing the Westfall Act); *Carroll v. Trump*, 66 F.4th 91 (2d Cir. 2023) (discussing the procedural history of this case's Westfall Act dispute).

60   *See Prejudice*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining "prejudice" as "[d]amage or detriment to one's legal rights or claims"); *see also* note 55, *ante* ("defining abuse of discretion").

61   *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008) (quotation marks omitted).

62   *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (quotation marks omitted and alterations adopted); *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quotation marks omitted).

63   *See AEP Energy Servs.*, 626 F.3d at 727.

64   Pl. Br. at 45; Oral Arg. Audio Recording at 26:06-30:02.

65   Oral Arg. Audio Recording at 26:06-27:44.

66   *Id.* at 27:45-28:22.

67   *Id.* at 28:23-29:20.

68   *Id.* at 28:57-29:04.

69   *Id.* at 39:40-40:28.

70   *Id.* at 39:50-40:05.

71   *Compare Trump v. Carroll*, 292 A.3d 220, 234 (D.C. 2023) (Westfall Act inquiry's "focus is on the subjective state of mind of the tortfeasor-employee"), *with Nixon*, 457 U.S. at 756, 102 S.Ct. 2690 (presidential immunity analysis rejecting "inquiry into the President's motives").

72   August 7 Order, *Carroll I*, ––– F.Supp.3d at ––––, 2023 WL 5017230, at *9.

73   *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

74   *Id.* (quotation marks omitted).

75   *Gilmore v. Shearson/Am. Exp. Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), *abrogated in part on other grounds by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988).

76   *Id.* at 113.

77   *See, e.g., Shields*, 25 F.3d at 1128 (failure to plead fraud with particularity is a revivable defense).

78   *Will v. Hallock*, 546 U.S. 345, 349, 126 S.Ct. 952, 163 L.Ed.2d 836 (2006) (quotation marks omitted). Defendant suggests that the only non-revivable defenses are those listed in Federal Rule of Civil Procedure 12(b)(2)-(5). Def. Br. at 42; Reply Br. at 27-29. Defendant is mistaken. A motion to compel arbitration, for instance, is non-revivable, even though it is not listed as a defense in Rule 12. *See* *Gilmore*, 811 F.2d at 112.

79   *Gilmore*, 811 F.2d at 113.

80   *Mead v. Reliastar Life Ins. Co.*, 768 F.3d 102, 113 (2d Cir. 2014) (alteration adopted) (quoting *Webb v. GAF Corp.*, 78 F.3d 53, 55 (2d Cir. 1996)).

81   *United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (quotation marks and citations omitted).

82   *See, e.g.,* *United States v. Salerno*, 868 F.2d 524, 539-40 (2d Cir. 1989); *see also* *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 629, 129 S.Ct. 1896, 173 L.Ed.2d 832 (2009) ("Appellate courts can ... authorize the district court's retention of jurisdiction when an appeal is certified as frivolous.").

83   *See* *United States v. Rodríguez-Rosado*, 909 F.3d 472, 478 (1st Cir. 2018) ("We think applying the bench-made divestiture rule today would surely short-circuit its aim of judicial efficiency .... [W]ith jurisdiction back in its hands, the district court, undoubtedly, would again deny [defendant's] motion, like every other time it has confronted—and denied—the motion. And then, chances are that [defendant] would once more appeal his case to us. Which would present to us [another] variation on the original theme of this case, like an encore, featuring the very same parties, the very same motion, the very same denial order, and the very same arguments on the merits. That seems to us too much to ask of a rule fashioned to ferret imprudence out of the courts."); *see also* *United States v. Hickey*, 580 F.3d 922, 927 (9th Cir. 2009) ("[B]ecause [defendant's] interlocutory appeal was ultimately a losing one, any claimed error in proceeding with limited pretrial matters was harmless and no useful purpose would be served by requiring that court to redecide the pre-trial motions." (quotation marks omitted)).

84   *Rodgers*, 101 F.3d at 251.

85   20 MOORE'S FEDERAL PRACTICE - CIVIL § 303.32 (3d ed. 2023).

86   *See* *Rodgers*, 101 F.3d at 251-52 (collecting cases).

87   *See* note 22, *ante* (explaining that we have appellate jurisdiction under the collateral order doctrine to review the District Court's determination that Defendant is not entitled to absolute immunity).

88   *See* *Tarpon Bay Partners LLC v. Zerez Holdings Corp.*, 79 F.4th 206, 221 (2d Cir. 2023).

89   *Bolmer v. Oliveira*, 594 F.3d 134, 141 (2d Cir. 2010).

90   Def. Br. at 56-61.

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.